GEORGE E. CORNELIUS, Appellee, v. BENJAMIN KROMMINGA, Appellant.

**COVENANTS:** Covenants of Title—Covenants Against Incum-
1. brances—Special Assessments—Deeds. Contract covenants against "liens or incumbrances," and escrow deeds executed with like covenants or warranties, are not breached by the subsequent levy of special *assessments* prior to the release of the deeds from escrow.

> PRINCIPLE APPLIED: A vendor, as part of an exchange, agreed to convey lands *"free and clear of all liens and incumbrances,"* except a named mortgage, and to furnish an abstract showing good, merchantable title, *"subject only to the mortgage lien above described."* Deed was executed accordingly, and placed in escrow to be delivered March 1st following. Some four months subsequent to the contract, and some two months prior to March 1st, a special assessment of $970 was levied upon the land by reason of a public drainage improvement thereon. The deal was closed, under agreement that the controversy as to who should pay this special assessment should be litigated. *Held*, neither the contract nor the warranty was breached.

**TAXATION:** Nature of Taxes—Special Assessments—Distinction.
2 Distinction between "taxes" and "special assessments" discussed.

*Appeal from Union District Court.*—H. K. EVANS, Judge.

THURSDAY, MARCH 15, 1917.

THE opinion sufficiently states the case.—*Affirmed.*

*P. C. Winter* and *F. M. Fuller*, for appellant.

*D. W. Higbee* and *R. Brown*, for appellee.

1. COVENANTS:
covenants of
title: covenants
against incum-
brances: special
assessments:
deeds.

WEAVER, J.—In the spring of the year 1914, the plaintiff, being the owner of 227 acres of land in Harrison County, Iowa, and the defendant, being the owner of 200 acres of land in the state of Wisconsin, began negotiations looking to an exchange of said properties. After various proposals had been made and con-

sidered, an agreement was reduced to writing, under date of August 5, 1914. By the terms of this writing, plaintiff undertook to convey the Iowa land to defendant, and in consideration thereof, defendant agreed to convey the Wisconsin land to plaintiff, also to assume payment of a mortgage lien of $7,000 then existing on the Iowa land, and to pay the plaintiff the further sum of $3,000 in money on March 1, 1915. Each party undertook to make conveyance of his lands on the 1st of March following, free and clear of all liens and incumbrances. It was also agreed that the deeds of conveyance should be executed within five days after the date of the contract, and delivered in escrow to a named bank in Creston for delivery on March 1, 1915, and that each should furnish the other an abstract showing a good, merchantable title, subject only to the mortgage lien above described. Warranty deeds were made and deposited as agreed. On December 15, 1914, the board of supervisors of Harrison County levied a special assessment upon the Iowa land to the amount of $971.25, for the cost of improving a drainage district within which such land is located. Dispute then arose between the parties upon the question whether this assessment constituted a lien or incumbrance on the land which plaintiff was bound to remove. A suit in equity was then brought by the plaintiff to settle the controversy. Before the case was brought to trial, an agreement was entered into whereby the defendant was to retain a sufficient sum to cover the amount of the assessment from the cash payment due March 1, 1915, the same with interest to be thereafter paid by him to the plaintiff should the litigation result in favor of the latter. Plaintiff thereupon abandoned his prayer for a reformation of the contract, relying solely upon the proposition that, under the contract and agreement between the parties, the drainage assessment is neither a lien nor incumbrance which he was bound to

remove, and that he was therefore entitled to judgment for the full amount of the sum withheld by the defendant from the cash installment due March 1, 1915. Upon submission of the case, the trial court held with the plaintiff, and gave him judgment for the amount of his claim. The defendant appeals.

While the action was begun in equity, the issue as presented in its final form was purely legal in its nature. The evidence tends to show, that, while negotiations for the exchange were pending, it was known and understood by both parties that the drainage improvement was in contemplation, and that some of the preliminary steps to that end had been taken. The defendant also admits that his offer as originally made for the exchange included the understanding that he was to assume the ditch tax if one was finally assessed, but he contends and testifies that this offer was not accepted, and that the exchange as eventually agreed upon was with the express stipulation that he was to receive conveyance of the Iowa land free and clear from all liens and incumbrances except the existing mortgage of $7,000, and that the ditch lien, if any, was to be removed by the plaintiff. Without taking time to recapitulate the testimony, we are of the opinion that, upon this issue of fact, the preponderance of evidence is with the plaintiff.

2. TAXATION: nature of taxes: special assessments: distinction. The more difficult question we have to consider is whether, ignoring the testimony as to the preliminary negotiations, and looking alone to the written contract and deed of conveyance as the final and best evidence of the terms of agreement, the ditch tax levied after the making of the contract and deed, and while the deed was still in escrow, is a lien or incumbrance which the plaintiff was in duty bound to remove. Were this question to be decided as one of first impression, it would be by no means free from difficulty, but we think our precedents have settled it adversely

to the position taken by the appellant. If assessments of this class were to be treated as "taxes" in the usual and ordinary meaning of that word, a different conclusion would doubtless have to be reached; but while, generally speaking, special assessments are generally imposed by an exercise of the taxing power, yet a clear distinction is everywhere recognized between a tax in the proper sense of the word and a special assessment. The former may be said to be a contribution or levy imposed upon property for general public purposes, without regard to the question of special benefits conferred, while the latter is imposed only as payment for special benefits conferred upon the property charged, by an improvement the expense of which is thus to be met. The time when an ordinary tax becomes a lien or incumbrance as between a grantor and grantee of land is in this state fixed by statute, and, in the absence of agreement or contract to the contrary, the date so fixed is controlling, although, as a matter of law and of fact, the tax is a lien upon the property from the date of its levy. There appears to be no express statutory rule on the subject as applied to special assessments. There is a provision of the statute (Code Supp., 1913, Section 1989-a45) providing that the special tax or assessment in drainage proceedings, "when levied, shall be a lien upon all premises upon which the same is assessed to the same extent and in the same manner as taxes levied for county and state purposes." Whether the effect of this would be to import into the drainage statute the provision above referred to concerning the lien as between vendor and vendee, it is unnecessary for us here to consider, because the parties have stipulated that the lien of this particular assessment attached on December 15, 1914, some four months after the making of the contract of exchange and the execution of the deed, but before the deed was taken out of escrow. Under such circumstances, and in view of the fact that the benefits derived

from the improvement accrue wholly to the property in the hands of the grantee, this court has been disposed to the view that such charge upon the land is neither a lien nor incumbrance within contemplation of the parties to a prior contract for sale or exchange of the land, nor within contemplation of a prior covenant of warranty against incumbrances. *Stuhr v. Butterfield,* 151 Iowa 736; *King v. Raab,* 123 Iowa 632; *Scott v. Wilson,* 157 Iowa 31. The ordinary purpose of a warranty against incumbrances is to assure the warrantee the very property he has purchased, undiminished in value by an outstanding superior right in a third person. A mere easement in the public which is not depreciative of the value of the land, and serves the convenience and advantage of the grantee in common with the general public, is not regarded as an incumbrance against which the seller's warranty is directed. *Harrison v. Des Moines & Ft. D. R. Co.,* 91 Iowa 114. The general doctrine which we apply in this case is quite clearly stated and approved in *Gotthelf v. Stranahan,* 138 N. Y. 345 (20 L. R. A. 455). Nothing is taken from the defendant; the value of his property is not only undiminished, but it is presumably increased to the full amount of the assessment against it; and we think there is no sound principle of law or equity which will permit him to shift the natural and proper cost of this increment upon the plaintiff.

It follows that the judgment of the district court ought to be and is—*Affirmed.*

Gaynor, C. J., Ladd, Evans and Preston, JJ., concur.