A. E. GATES, Appellee, v. J. G. WIRTH, Appellant.

**LIFE ESTATES:** Taxes—Levies After Termination of Estate—Who Liable.  A life tenant (*pur autre vie*) is not liable to the remainderman for taxes *assessed before* but *levied after* the termination of the life estate.

*Appeal from Jasper District Court.*—HENRY SILWOLD, Judge.

MONDAY, JUNE 18, 1917.

REHEARING DENIED SATURDAY, SEPTEMBER 29, 1917.

ACTION by the remainderman against a life tenant to recover for taxes assessed but not levied during the exist-

ence of the life tenancy. After the expiration of the life tenancy, the plaintiff, the remainderman, paid the tax, and now seeks to recover from the life tenant the amount paid. Judgment for the plaintiff in the court below. Defendant appeals. Opinion states the facts.—*Reversed.*

*J. E. Cross,* for appellant.

*Tim J. Campbell,* for appellee.

GAYNOR, C. J.—Defendant was the owner of a life estate in a tract of farm land, consisting of about 240 acres. The continuance of his estate rested upon the life of one A. C. Gates. . Gates died August 15, 1913, thereby terminating the life estate. The plaintiff is the remainderman. The life tenant failed to pay the taxes for the year 1913. The land went to sale, and the remainderman redeemed from the sale, and then brought suit against the life tenant for the amount paid in redeeming it. The land was listed and assessed in January, 1913, for that year. The plaintiff recovered in the court below. The defendant, the life tenant, appeals.

LIFE ESTATES: taxes: levies after termination of estate: who liable.

The question here is whether or not a life tenant is liable for taxes *assessed* before but levied after his estate terminated. Before entering upon a discussion of this question, it is well that we have before us at least the substance of our statutes bearing on the question of taxation.

It is provided in Section 1350 of the Code of 1897 that property shall be taxed each year; that personal property shall be listed and assessed each year, in the name of the owner, on the 1st day of January. Real estate shall be listed and valued in each odd-numbered year.

Code Section 1352 provides that each assessor shall enter upon the discharge of the duties of his office immediately after the second Monday in January, and shall enter

upon the assessment rolls the several items of property required to be entered for assessment, and shall personally affix values to all property assessed by him.

Code Section 1353.  When the name of the owner of any real estate is unknown, it shall be assessed without connecting therewith any name, simply designating unknown owners at the head of the page; and the real estate of persons deceased may be listed as belonging to the estate or his heirs, without enumerating them.

Code Section 1305.  All property subject to taxation shall be valued at its actual value, which shall be entered opposite each item, and shall be assessed at twenty-five per cent. of such actual value, and this is to be taken and considered as the taxable value of the property, and shall be the value at which it shall be listed, and upon which the levy shall be made.

Code Section 1303.  The board of supervisors at its September session shall levy taxes upon the assessed value of the taxable property.

Code Section 1400.  Taxes upon real estate shall be a lien thereon against all persons except the state. Taxes due upon personal property shall be a lien upon any and all real estate owned by such person, or to which he may acquire title.  As against a purchaser, such liens shall attach to real estate on and after the 31st day of December in each year.

Code Section 1403.  It shall be the duty of every person subject to taxation to attend at the office of the treasurer, at some time between the first Monday in January and the first day of March following (that is, following the levy), and pay his taxes in full; or one half thereof before the first day of March succeeding the levy, and the remaining half before the first day of September following.

That is, taxes are due and payable on the 1st of January following the levy, but do not become delinquent, and penalty for failure to pay does not attach if paid as indicated in the above statute.

Considering real estate from the viewpoint of the taxing power, it is apparent that all lands afford permanent and substantial basis of revenue for governmental purposes. All lands are subject to taxation for that purpose, and for all time. As soon as lands pass out of the hands of the government, and a citizen becomes vested with title or ownership therein, no account is necessarily taken of the individual in whom the title rests, when we come to consider the *right* of the government to tax the property to meet the expenses of government. That right inheres in the government, independent of the relationship of any particular individual to the land or to the title. The land itself, independent of the title held by individuals, is subject to taxation. The statute, however, points out the method to be pursued by the government in subjecting lands to the payment of taxes, so that the burden may be equitably distributed. It is apparent that the right of the government to subject lands to the payment of taxes for governmental purposes is in no way affected by the *character* of title under which it is held by the citizen.

When the machinery of government is called into action, for the purpose of securing this revenue out of lands, the first step required by the statute is that the lands be listed, but to someone as owner. In listing, the government itself is not concerned as to who is in fact the owner. It is listed as against the party as owner whose name appears upon the records; or, if the owner is unknown, then without connecting any name; or if it was the real estate of a deceased person, it is listed as belonging to the estate of his heirs, without enumerating them.

All lands, broadly speaking, are subject to taxation, and

the listing and assessing is for the purpose of fixing a basis for an equitable apportionment of the burden on the particular lands. It therefore becomes the duty of the assessor, under the statute, to list the land under proper subdivisions for that purpose. The listing and valuation are only initial steps leading up to the imposition of the annual burden upon the particular tract. The valuation fixed by the assessor may be reviewed by the board of equalization, and a valuation finally fixed to each tract or any particular tract such as will secure a just and equitable distribution of the burden upon all taxable property within the district.

When the land has been thus listed and the valuations finally fixed, the roll is passed to the board of supervisors. It then becomes necessary for this board to ascertain the amount of revenue needed for governmental purposes for the particular year, and the board fixes the per centum and makes the levy on the basis of the value fixed. Thereafter, by mathematical calculation, a definite and ascertained burden rests on each tract of land for the purposes of governmental revenue for that year. Not until the board of supervisors has acted does the owner of the land rest under any obligation to contribute any particular amount, in order to discharge his land from the obligation to contribute revenue to the government for that year. The amount, not being fixed, cannot be known until the board of supervisors has acted. The amount to be paid and the obligation to pay that particular amount is then fixed for the first time, and it then, as between the landowner and the state, becomes a lien upon the particular property against which the tax is lodged, and that lien continues, if we may call it a lien, as a claim against the land on the part of the state until discharged. The obligation, however, does not mature until the 1st of January, and this obligation may be discharged at any time between January and April, without

penalty to the landowner. The taxing power, therefore, is not concerned in any controversy that might arise between one holding a life estate in lands and one entitled to the remainder upon the expiration of the life estate. That is a matter for adjustment between the parties holding these different titles. The tax on land is not, in a strict sense, an obligation imposed upon the owner of the land, except in so far as the payment of the tax is essential to protect his rights in the land. So far as the state is concerned, it is not a debt that may be enforced by personal action against the landowner, no matter what his title may be. The tax, when finally levied against the land, is not a debt or personal obligation of the landowner. It is a burden imposed by the government without his consent. The burden is imposed upon the land. He may discharge this burden. If he does not discharge it, the land itself is the only source from which payment may be secured that is open to the state.

We are not, in this case, however, concerned with the rights of the governing body to secure its revenue from lands, nor the method pursued by it in procuring this revenue. The governing body having this plenary power to secure revenue from lands for governmental purposes, the law steps in between title owners and regulates their duties to protect the land from sequestration; and so the rule has been established that, as between one holding a tenancy in land for his own life or for the life of another, and the remainderman, the obligation to pay the amount charged against the land and to protect the land from governmental sequestration rests primarily upon the life tenant; and the law says to the life tenant, "It is your duty to protect the land from sequestration, to the end that the remainderman's title may be preserved to him upon the expiration of the life estate." Upon sequestration by the governmental power, all titles pass,—the title of the life tenant and the

remainderman.   To protect it from this, however, either
party may discharge the burden of the tax.   It is the duty
of the life tenant, therefore, to discharge, during the con-
tinuance of his tenancy, any burden that is laid upon the
land in the way of taxes during the continuance of his
estate.

As said before, the land was subject to be taken for any
tax that might be imposed by the government at any time
and for all time.   This right attached to the interest in the
life estate as well as to the estate out of which it was
carved.   The life tenant is in possession, receives the use
and profits, and so it is considered equitable and just, as
between him and the remainderman, that the burden of tax
imposed during the time he so enjoys the property, should
be discharged by him; but he is required to discharge only
those burdens which have become definitely ascertained and
fixed upon the land before the expiration of his tenancy.
The listing and the valuation by the assessor is not the *im-
position* of the burden, and, in and of itself, casts no burden
upon the land other than the general burden that rests on
all lands by reason of the general rule that makes it always
subject to taxation and consequent sequestration.

The listing and valuation by the assessor is for the pur-
pose of laying the foundation for the ascertainment of the
annual tax *to be levied* against the land.   It is, as it were,
the foundation for ascertaining the equitable burden that
the land must bear for governmental purposes for that
year; or, in the case of real estate, for two years.   This can
be fixed and determined only when the board of supervisors
holds its annual session in September.   No specific burden
rests. upon the land before the board acts.   The owner of
the land was not called upon to pay any specific amount
until that time.   It then became for the first time a spe-
cific burden, dischargeable on the 1st of January following.
Thereafter he was given until the 1st of April to pay it

without penalty, and discharge his land from the burden. If the tax was not paid by the 1st of April, a penalty attached, and then if it was not paid at all, the land itself was subject to sale, to discharge the obligation.

From the statutes hereinbefore set out, and what we have just said, the following is apparent:

All property in the state is subject to taxation for governmental purposes. The action of the assessor in listing and fixing a valuation on property is only the initial step towards the ultimate fixing of a burden of taxation on specific property for the year or years for which it is assessed. The burden does not attach until the board of supervisors in September have ascertained the amount necessary to be raised for governmental purposes, and have fixed the per centum of tax necessary to raise that amount, based upon the assessor's valuation. The amount assessed against any particular piece of land is ascertained and determined on the basis of the per centum fixed by the board of supervisors, calculated on the valuations as finally fixed. No one is under obligation to pay taxes until after the levy has been made; that is, until the amount chargeable is charged to the specific property. The duty to pay the amount thus fixed does not arise until the 1st of January following.

The duty to pay, in order to discharge the land, as between title owners, rests, generally speaking, on the owner of the land at the time the annual tax to be levied is actually ascertained, fixed and levied, and this obligation to pay in no event arises until the work of the board of supervisors is completed, in September. This is the first time that the specific annual tax for the year became a lien upon the property, and this is the first time that an obligation rested on anyone to discharge the tax in order to free the land from the burden.

It follows, therefore, that, inasmuch as the estate of the life tenant in this case expired before any levy of taxes

had been made for that year, before the burden of taxes for that year was imposed upon the real estate in question, he was under no obligation to discharge the taxes for that year for the benefit of the remainderman.  The tax in question did not come into existence as an enforcible claim against the land until the remainderman came into possession of the land, freed from the burden of the life estate. The amount of the tax was not and could not be ascertained and determined until after the expiration of the life estate. No lien for the taxes for that year rested upon the land until after the expiration of the life estate.  No tax was due until after the expiration of the life estate.  To hold that the life tenant's obligation to pay taxes dates from the time of the assessment, is to hold that, if lands were assessed in odd years, and the life tenant continued in possession for the odd year, and his estate ceased at the expiration of the odd year, he would still be holden for the tax for the even year following, because it had already been assessed by the assessor for that year before the expiration of the life tenancy.

Although the taxes are assessed in September by the board of supervisors, yet as to a purchaser the lien does not attach until the 31st day of December following.  We are not prepared to hold that this statute applies and should govern the question here under consideration, but by analogy we feel justified in saying that, if the title of the life tenant ceased before there was any levy of taxes for that year, before any lien attached in favor of the state for that year, before the taxes could have been paid by the life tenant for that year, the life tenant ought not to be holden, as between him and the remainderman, for the payment of the taxes for that year.  As said in *Brodie v. Parsons*, (Ky.) 64 S. W. 426:

"It is well settled that the burden of paying current taxes is upon the tenant for life, rather than upon the re-

mainderman (citing authorities). It is urged that this rule should not be applied because the life tenant died on the 27th of January, before the taxes for the year were payable, and that she did not enjoy the rents for the entire year covered by them. We think otherwise. The taxes became a *lien on the land on the 15th day of September.* The liability for their payment depends on the state of the title *at that time,* and, being fixed then, is. not affected by the death of the life tenant before the expiration of the year for which the taxes were levied. A purchaser of property on the 27th day of January would not be required to pay these taxes. The remainderman is entitled to receive the property free of all charges which the law casts upon the life tenant; for otherwise he would take the property with the burden, and the life tenant, not being liable for any taxes levied before the death of the testator, C. B. Parsons, would be governed by a different rule at the close of the tenancy from that applied at the beginning."

It will be noted from this case that the duty of the life tenant to pay is fixed by the date of levy, the date when the tax became a lien. If his estate expires before that date, he is not bound for the taxes; if after, he is liable. See also *Penn's Exr. v. Penn's Exr.,* (Ky.) 87 S. W. 306.

Our attention is called to *Adams v. Snow,* 65 Iowa 435. It is thought that some language used in that case supports plaintiff's contention in this; but not so: The language used was in discussing the statute requiring notice of the expiration of the time for redemption from tax sale to be served on the one in whose name the property was "taxed," and it was held that this meant the person in whose name it was assessed; that, for the purposes of that statute, the word "taxed" should be understood as meaning "assessed." After lands are listed and assessed to the person named, and the assessment is returned to the auditor, they are regarded as "taxed" to him. The listing and assessing are done in or-

der to subject the land *to taxation,* and, when done, the land is "taxed," *within the meaning of the statute,* to the person named as the owner in the tax book. The court said:

"The assessing, listing and levy are separate and successive steps in the imposition of taxes. They are all intended to accomplish that end. The land, as it were, is first designated and brought within the exercise of the *jurisdiction of the taxing power* by the assessor; the other steps are intended to determine the amount of the tax, and are proceedings to enforce the authority to tax, the first exercise of which was the assessment. Lands are thus subjected to taxation by the assessment, and when assessed are to be regarded as taxed. * * * The taxes, we will presume, were levied before the expiration of the time for redemption, which was in October. The statute requires the taxes to be levied in September. We will presume the levy was made in that month. It thus appears that, at the time the deed was made by the treasurer, the land was 'taxed' to the plaintiff."

This case simply holds that, under the statute requiring notice of the time of the expiration of the period of redemption from tax sale to be served upon the person in whose name the land is "taxed," the word "taxed," as used in the statute, should be construed to mean "assessed." The fact in that case is that it was not only assessed but taxed before notice was served. To the same effect is *Heaton v. Knight,* 63 Iowa 686, in which it is held that, under this statute, requiring notice of expiration of the time of redemption to be served upon the person in whose name the land is "taxed," the word "taxed" should be construed to mean "assessed." The court said:

"Under the statute, a listing and an assessment of land by the assessor should be *construed* as taxing for the

purpose of the service of the notice which must precede execution of a treasurer's deed."

We are not aided in this investigation by decisions from other states to any material extent, nor has the matter ever been directly determined by this court.

It must be borne in mind that, as to the taxing power, in so far as titles are affected by the levy of the taxes, the levy involved the title of the remainderman as well as the title of the life tenant; that, upon a failure to pay the taxes, a sale for taxes would divest the whole title. The life tenant's title having been wiped out before the levy, no title remained in him to be affected by the levy. The title then was fully invested in the remainderman. The duty of the life tenant to protect that title rested on him only so long as his title continued. It ceased with the expiration of his title. His title expired before any tax was levied.

We are satisfied that the court erred in holding the life tenant liable for the taxes on the land after the expiration of the life tenancy. The case is therefore—*Reversed.*

Ladd, Evans and Salinger, JJ., concur.