UNITED STATES of America,
Plaintiff,

v.

3 PARCELS OF LAND IN WOODBURY
COUNTY, IOWA et al., Defendants.

Civ. No. 1185.

United States District Court
N. D. Iowa, W. D.

Oct. 24, 1961.

**530**

F. E. Van Alstine, U. S. Dist. Atty., and William R. Crary, Asst. U. S. Dist. Atty., Sioux City, Iowa, for the United States.

Richard Rhinehart, Sioux City, Iowa, for defendant, Woodbury County, Iowa.

John S. Sears and John B. Pizey, Sioux City, Iowa, for defendants, G. L. Satterlee, Vletta Satterlee, Joe Mosow and Juanita Mosow.

GRAVEN, District Judge (by assignment).

This action involved the condemnation by the United States of certain parcels of land in Woodbury County, Iowa. A controversy has arisen as to the status of the 1960 real estate taxes levied upon certain of those parcels.

On July 7, 1960, the United States filed a complaint initiating the present proceeding for the condemnation of three parcels of land located in Woodbury County, Iowa. On November 28, 1960, pursuant to Section 258a of Title 40 U.S.C.A., a "declaration of taking" was filed in that cause which declared that said lands were thereby taken for the use of the United States. At the time of the filing of said declaration, the United States deposited in the registry of this Court the amount of the estimated just compensation for the taking of said lands. There is no controversy as to the amount of compensation. On July 28, 1961, a motion was filed by G. L. Satterlee, Vletta Satterlee, Joe Mosow and Juanita Mosow, the former owners of one of the three parcels, parcel number three, for a distribution of estimated just compensation. Prior to a hearing on said motion, Woodbury County, which has at all times since the commencement of the condemnation proceeding been a party thereto, filed an answer to the declaration of taking alleging that the 1960 real estate taxes, in the amount of $5,881, were a lien on parcel number three when title to that tract was acquired by the United States. In its answer, Woodbury County urged that such lien is now transferred to the fund in the registry of this Court. In addition, Woodbury County makes claim for $1,396.58, the amount of the unpaid 1960 real estate taxes on parcel number one. As to such parcel, judgment was entered by this Court on January 26, 1961, fixing the amount of just compensation and ordering the distribution of said compensation to the former owner of said parcel. No objection was made at that time by Woodbury County and such distribution of compensation was accordingly made. It is the view of the Court that if there is any redress or remedy yet available to Woodbury County in connection with the unpaid taxes on parcel number one, such redress or remedy cannot be granted in connection with the present determination which arises solely upon a motion for distribution of the compensation for parcel number three. There is no controversy as to parcel number two.

The amount of the estimated just compensation deposited with the Court for parcel number three was $105,000. The Court has previously ordered that $97,000 of this fund be distributed and that $8,000 be retained pending the determination of the present claim for real estate taxes.

It is conceded that after the title to the tract in question vested in the United States through condemnation, a lien for real estate taxes could not be enforced against the tract itself. This is true not only because of the Iowa statutes (Secs. 1.4, 427.1, Code of Iowa 1958, I.C.A.) but also because of the theory of dual sovereignty which prevents the states from taxing the property of the United States. United States v. 150.29 Acres of Land, 7 Cir., 1943, 135 F.2d 878, 880. However, the condemnation award now stands in the place of the land and the rights of the taxing authority may be treated as though transferred to the award. Collector of Revenue Within and for the City of St. Louis, Mo. v. Ford Motor Co., 8 Cir., 1946, 158 F.2d 354;

355; United States v. 25.936 Acres of Land, 3 Cir., 1946, 153 F.2d 277, 279; United States v. 909.30 Acres of Land, D.C.1953, 114 F.Supp. 756, 759. In Collector of Revenue Within and for the City of St. Louis, Mo. v. Ford Motor Co., supra, the Court of Appeals for this circuit stated (158 F.2d at page 355):

> "When the United States appropriated the land in question under the power of eminent domain, the lien for taxes could not thereafter be specifically enforced against the property taken, but the effect of the condemnation proceeding was to transfer the lien from the land to the award in the registry of the court."

In United States v. 25.936 Acres of Land, supra, the Court stated (153 F.2d at page 279):

> " * * * It is settled that when land in which various persons have separate interests or estates is taken by the United States for public use, the amount of compensation to be paid must be determined as if the property was in a single ownership and without reference to conflicting claims or liens. * * * The compensation paid is for the land itself and the value of the separate interests cannot exceed the worth of the whole. * * * Taxes levied and assessed against real estate do not increase the land's value. * * Though tax liens or other encumbrances may amount to more than the value of the property the United States can still acquire the property in fee simple by paying just compensation. This is true whether the amount paid is sufficient to discharge all of the encumbrances or not. * * * "

Specific statutory authorization is given to the federal courts to direct that taxes are to be paid from the funds deposited with such courts as compensation for property condemned by the United States. Section 258a of Title 40 U.S.C.A., provides, in part, as follows:

> "The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

In construing this statute, the Court of Appeals for this circuit, in Collector of Revenue Within and for the City of St. Louis, Mo. v. Ford Motor Co., supra, held that local law must be consulted to determine questions of tax liability such as when a lien attaches.

It would seem that the status of taxation at the time of the condemnation by the United States, i. e., whether the condemnation was before or after the taxes have become a lien under the local law, is controlling in determining whether the taxes are payable out of the award. Valid existing tax liens must be satisfied from the award. United States v. 25.936 Acres of Land, 3 Cir., 1946, 153 F.2d 277, 279; United States v. Certain Parcels of Land in Philadelphia, Pa., 3 Cir., 1942, 130 F.2d 782, 783; Cobo v. United States, 6 Cir., 1938, 94 F.2d 351, 352. Conversely, it has been held that real estate taxes which have not become a lien under local law before title vests in the United States via condemnation are not to be paid from the award. People of Puerto Rico v. United States, 1 Cir., 1942, 131 F.2d 151, 152; United States v. Certain Lands in Borough of Brooklyn, D.C.1941, 41 F.Supp. 51, 53. In the former case the Court stated (131 F.2d at pages 151–152):

> "By force of the statute, 40 U.S.C.A. § 258a, the money deposited in court by the United States Government at the time it takes title under condemnation proceedings stands in place of the land which has been taken and from it the claims of lienholders may be satisfied. This applies to tax liens as well as to liens of other kinds but only to existing liens, not to potential ones. City of St. Louis v. Dyer, 8 Cir., 56 F.2d 842; Drake v. City of St. Paul, 8 Cir., 65 F.2d 119. The determina-

tive question in the case at bar, then, is whether or not the People of Puerto Rico had an existing, not just a potential, lien for taxes at the time when the land in question was taken."

In the latter case (41 F.Supp. at page 53), it is noted that in a case involving the payment of tax liens out of the amount paid into court by the United States as just compensation for a parcel of land condemned, the United States has no direct interest in the matter and is regarded as having somewhat the status of an amicus curiae. That would seem to be the situation of the United States in the present case.

██ It is the date upon which title passes to the United States which fixes the exempt status of the property. Weber v. Wells, 9 Cir., 1946, 154 F.2d 1004; South Carolina Public Service Authority v. 11,754.8 Acres of Land, 4 Cir., 1941, 123 F.2d 738, 741; United States v. 909.30 Acres of Land, D.C.1953, 114 F. Supp. 756, 758. This is to be determined by federal law and under the provisions of Section 258a this is the time at which the declaration of taking is filed and the estimated just compensation deposited with the court. Travis v. United States, Ct.Cl.1961, 287 F.2d 916, 919, certiorari denied 82 S.Ct. 42; United States v. 150.29 Acres of Land, 7 Cir., 1943, 135 F.2d 878, 880. In the present case this date was November 28, 1960. Thus, it must be determined whether, under the Iowa law, there was an existing lien on the parcel in question for 1960 real estate taxes on that date.

In Iowa the taxing process begins with the assessment of the property to be taxed by the county assessor as provided in Chapter 441, Code of Iowa 1958, I.C.A. This assessment is completed prior to May 1st of each year and the assessment rolls delivered to the county board of review. Section 441.9, subd. 7, Code of Iowa 1958, I.C.A. The board of review meets the first Monday of May of each year and, between that time and June 1st, it may reevaluate and reassess certain property. Chapter 442, Code of Iowa

1958, I.C.A. Upon determination of the assessments, the county auditor forwards an abstract of the results to the State Tax Commission. The Commission then equalizes assessments prior to the third Monday in August. The county auditor is furnished with the results of the equalization. Section 442.18, Code of Iowa 1958, I.C.A.

The next step in the taxing process is the levy of taxes which is the determination by the various state taxing authorities of their need for revenue. The county board of supervisors at its September session levies taxes on the assessed value of the property in the county. Section 444.9, Code of Iowa 1958, I.C.A. The county auditor then prepares the tax list describing the property, the owners, and the amount of the tax. This is delivered to the county treasurer by January 1st of the following year at which time taxes become payable. Section 445.36, Code of Iowa 1958, I.C.A.

There are only two Code provisions which refer in any way to the existence of a lien on the real estate for the tax owed. Section 445.28, Code of Iowa 1958, I.C.A., provides as follows:

> "*Lien of taxes on real estate.* Taxes upon real estate shall be a lien thereon against all persons except the state."

Section 445.30, Code of Iowa 1958, I.C.A., provides:

> "*Lien between vendor and purchaser.* As against a purchaser, such liens shall attach to real estate on and after the thirty-first day of December in each year."

The former statute, although creating a lien, does not specify upon which date the lien shall attach. The latter statute, by its own context, only specifies the date which is to control in determining whether the vendor or the purchaser should bear the tax, *as between themselves.* It is a corollary to the general rule stated as follows in 92 C.J.S. Vendor & Purchaser § 290, page 168:

> "The purchaser must pay the taxes and assessments for which he is lia-

ble under the provisions of the contract or deed, and [absent such provision] the purchaser will ordinarily be liable for all taxes which become a lien after the conveyance."

The Iowa Supreme Court, in construing Section 445.30, stated in the case of Clinton v. Shugart, 1904, 126 Iowa 179, 101 N.W. 785, 787–788:

> "According as the passing of the title takes place before or after the date named in the statute [Section 445.30], will the duty of paying the taxes fall upon the vendee or vendor."

The rule was similarly stated in the case of Mohr v. Joslin, 1913, 162 Iowa 34, 142 N.W. 981, 983. Thus, in Iowa, if there is no provision as to the payment of taxes in the contract or deed, the legal owner on December 31 is liable for the taxes as between vendor and purchaser. Section 445.30 specifies when the lien shall be considered as attaching for this purpose. Statutes of this type are not unusual and it appears that in several jurisdictions the date that is determinative for this purpose under such statutes is not the same date upon which the taxes become a lien on the realty for ordinary purposes.

A Minnesota statute construed and discussed in the case of Independent-Consolidated School District No. 27 of Mower County v. Waldron, 1954, 241 Minn. 326, 63 N.W.2d 555, created a lien for real estate taxes and provided that such lien attached to the real estate on May 1 of the year of levy, but that *between grantor and grantee*, the lien did not attach until January of the following year. A Washington statute discussed in the case of Bethany Presbyterian Church v. City of Seattle, 1929, 154 Wash. 529, 282 P. 922, provided that real estate taxes became a lien upon the land on March 1 of the year of levy, but as *between grantor and grantee*, the lien did not attach until February of the following year. Similarly, an Oklahoma statute discussed in the case of Allen v. Henshaw, 1946, 197 Okl. 123, 168 P.2d 625, imposed a lien for real estate taxes in January of the year of

levy, but provided that *between grantor and grantee*, the lien did not attach until October 1 of that year. While it is true that the Iowa statutes, unlike the statutes just referred to, do not specify the date upon which real estate taxes become a lien for ordinary purposes, the fact that Section 445.30 fixes the date upon which the lien attaches "as against a purchaser," would indicate that in the ordinary course of events the lien attaches at some other time, as is the case in the other jurisdictions referred to.

In a Commentary on the Iowa Tax System appearing in Volume 23 of the Iowa Code Annotated (1949 ed.), Professor L. K. Tunks states (p. 86, footnote 73):

> "When it is desirable to determine the date such lien attaches against a buyer, the statute *postpones its attachment* until December 31. I. C.A. § 445.30." (Emphasis supplied.)

Ordinarily it is not a matter of concern to the taxing authority whether or not the lien actually attaches at an earlier date than is specified in Section 445.30, since the lien follows the property from grantor to grantee. The taxing authority is ordinarily not interested in asserting such a lien until taxes have become delinquent in the following year. It is only in the infrequent situation where the property falls into exempt hands before December 31 that it makes any difference to the taxing authority at what time the lien attaches. Because of this feature, there is very little Iowa law relating to the problem raised in the present case.

The case of Cornelius v. Kromminga, 1917, 179 Iowa 712, 161 N.W. 625, contains some dictum as to when an ordinary real estate tax becomes a lien on the land. In that case a dispute had arisen between a vendor and purchaser as to who was responsible for the payment of a special assessment which had been levied for a drainage improvement. The Court held that the lien of the special assessment, unlike the lien of ordinary taxes, was not one which the vendor was bound to dis-

charge even though existing at the time of the conveyance. The Court, in referring to the time when an ordinary tax becomes an encumbrance, stated (at page 626 of 161 N.W.) :

"The time when an ordinary tax becomes a lien or incumbrance as between a grantor and grantee of land is in this state fixed by statute, and in the absence of agreement or contract to the contrary the date so fixed is controlling, *although as a matter of law and of fact the tax is a lien upon the property from the date of its levy*." (Emphasis supplied.)

Perhaps more direct consideration was given to the matter in the case of Gates v. Wirth, 1917, 181 Iowa 19, 163 N.W. 215. That case involved a dispute between a life tenant and a remainderman of an Iowa farm as to which one was liable, as between themselves, for the real estate taxes for the year of 1913. The life estate, measured by the life of a third person, terminated in August of 1913. The Court stated the rule as being that a life tenant is ordinarily responsible for the payment of current real estate taxes but if a life tenant's estate expires before the current taxes become a lien he is not liable for the taxes and the remainderman is. It therefore became necessary for the Court to determine at what time such taxes become a lien in Iowa. As to this the Court stated (at page 218 of 163 N.W.) :

"No one is under obligation to pay taxes until after the levy has been made; that is, until the amount chargeable is charged to the specific property. The duty to pay the amount thus fixed does not arise until the 1st of January following. The duty to pay, in order to discharge the land, as between title owners, rests, generally speaking, on the owner of the land at the time the annual tax to be levied is actually ascertained, fixed, and levied, and this obligation to pay in no event arises until the work of the board of supervisors was completed in Sep-

tember. *This is the first time that the specific annual tax for the year became a lien upon the property*, and this is the first time that an obligation rested on any one to discharge the tax in order to free the land from the burden." (Emphasis supplied.)

In referring to the provisions of Section 445.30 relating to the payment of taxes as between vendor and purchaser, the Court stated (at page 218 of 163 N.W.) : "We are not prepared to hold that this statute applies and should govern the question here under consideration * * *." It would seem from the foregoing that the Iowa Supreme Court is of the view that the date upon which the lien of real estate taxes attaches to the land is the date the levy is made. It would also seem that the Court felt that the date established by the vendor-purchaser statute (Section 445.30) was not the date upon which the lien attached. It expressly refused to apply that statute and went to some length to demonstrate that the lien attached at the time of levy.

The Court of Appeals for this circuit has examined the problem of when real estate taxes become a lien in Iowa in the case of Helvering v. Johnson County Realty Co., 8 Cir., 1942, 128 F.2d 716. The latter case was an income tax dispute in which a taxpayer had purchased a parcel of Iowa real estate on December 28, 1935. In 1936 the taxpayer paid the 1935 real estate taxes and sought to deduct the payment of said taxes on his 1936 income tax return. The Board of Tax Appeals held such deduction to be valid. On review, the Court of Appeals reversed in an opinion by Judge Thomas. The Court stated the law of the case, as far as the validity of the deduction, to be that "either a pre-existing tax lien or personal liability for * * * taxes on the part of the vendor is sufficient to foreclose a subsequent purchaser [who pays the tax] from deducting such payment." Id., 128 F.2d at page 717. The Court determined that under the Iowa decisions neither the taxpayer nor his vendor could be personally liable so the inquiry was entirely one of whether there

was a pre-existing tax lien. The Court held that under the Iowa law the lien attached to the property in September, 1935, when the levy was made and thus was an existing lien when the property was purchased. In so holding, the Court relied upon Cornelius v. Kromminga, supra, and Gates v. Wirth, supra. Under the provisions of the vendor-purchaser statute (Section 445.30) there would have been no pre-existing lien on December 28 as between vendor and purchaser. Clinton v. Shugart, supra. As to that statute the Court stated (at page 717): "This section by its own context, however, has reference only to the rights of the vendor and purchaser inter sese and not to the rights of the state."

Two opinions of the Attorney General for the State of Iowa would seem to be contra to the views just expressed. In Op.Att'y Gen.1936, p. 202, the Attorney General ruled that real estate taxes attach as a lien against the land in Iowa on December 31. The basis for the opinion appears to be that a fixed date after all of the steps in the taxing process have been completed is more convenient than relying on the date of levy which varies from county to county and from year to year. The opinion does not cite any authority directly supporting its conclusion. No reference is made in the opinion to the cases of Cornelius v. Kromminga, supra, or Gates v. Wirth, supra. Op.Att'y Gen.1938, p. 692, although not referring to the earlier Attorney General opinion, also states that real estate taxes become a lien upon December 31 although that was not the principal question under consideration in the latter opinion.

 The opinions of the Attorney General as to local law, while entitled to consideration and persuasive, are not controlling on the courts. In re Swesey, D.C. 1953, 112 F.Supp. 773, 778; Des Moines Independent Community School District v. Armstrong, 1959, 250 Iowa 634, 95 N.W.2d 515, 521; City of Nevada v. Slemmons, 1953, 244 Iowa 1068, 59 N.W. 2d 793, 794, 43 A.L.R.2d 693. See generally Larson, The Importance and Value of Attorney General Opinions, 41 Iowa Law Review 351 (1956). While direct authority as to the question here under consideration is sparse, it would seem that the Iowa Supreme Court has indicated that it is of the view that real estate taxes become a lien on the land at the time of levy. The Court of Appeals for this circuit has so interpreted the Iowa law.

There remains to be considered, however, another contention which has been urged by the former owners of parcel number three. They maintain that even if under the Iowa law the taxes ordinarily become a lien at the date of levy that their rights are, nonetheless, to be determined under Section 445.30, the vendor-purchaser statute. In support of this contention they urge that condemnation in effect creates a vendor-purchaser relationship and that, therefore, under the statute, the lien did not attach until December 31, after title had vested in the United States.

There are cases which lend support to the former owners' theory. In Independent-Consolidated School District No. 27 of Mower County v. Waldron, 1954, 241 Minn. 326, 63 N.W.2d 555, a school district filed a petition for the condemnation of certain lands in November, 1952. The State of Minnesota, which was a party to the action, claimed a lien against the award for the 1952 real estate taxes. The district court held that the award was not subject to the lien for taxes. On appeal this was affirmed. The Supreme Court held that a Minnesota statute, which provided that all taxes imposed upon property after the filing of a condemnation petition and paid by the owner should be added to the award, had the effect of exempting the former landowners from the payment of all taxes imposed after the petition was filed. The Court stated that taxes imposed after the petition was filed meant taxes which became a lien after such time. A Minnesota statute provided that real estate taxes became a lien on May 1 of the year of levy but that as between grantor and grantee such

lien did not attach until the first Monday in January of the following year. The Court held that the condemnation proceeding created a grantor-grantee relationship and that the lien therefore did not attach until January of 1953, after the petition had been filed.

In the case of Bethany Presbyterian Church v. City of Seattle, 1929, 154 Wash. 529, 282 P. 922, the city condemned certain church property and gained title to the same on January 16, 1929. A Washington statute provided that the 1928 real estate taxes became a lien upon the property on March 1, 1928, but, as between grantor and grantee, such lien did not attach until the first Monday in February of the following year (1929). The Court held that under the provisions of the statute there was no lien on the property at the time it passed to the City since the condemnation in effect created a grantor-grantee relationship. For this reason, it was held that no lien attached to the condemnation award. The Court stated (at page 924 of 282 P.):

> "Does the law regard the church and the city as conventional grantor and grantee, as if a voluntary conveyance had been made by the church to the city instead of title to the land passing by virtue of the eminent domain proceeding and payment of the award as therein adjudicated? Our recent decision in American Creameries Co. v. Armour & Co., 149 Wash. 690, 271 P. 896, and the authorities therein noticed, we think, are decisive in favor of the church upon this question; that is, that the title passed from the church to the city, in legal effect, as from grantor to grantee."

A statute relating to the payment of real estate taxes as between grantor and grantee was similarly applied to determine the right of the taxing authority to collect such taxes on condemned property in the case of Allen v. Henshaw, 1946, 197 Okl. 123, 168 P.2d 625. The Oklahoma Supreme Court divided five to four in that case.

The Iowa Supreme Court has not passed upon the question of whether the condemnation of land by·a public body is to be regarded as giving rise to a vendor-purchaser relationship within the scope of the Iowa vendor-purchaser statute referred to. In the case of Gates v. Wirth, supra, it regarded that statute as inapplicable to a life tenancy-remainderman situation. It was heretofore noted that the federal courts hold that the question of when real estate taxes on land condemned by the United States become a lien thereon is to be determined by local law. However, it would seem that the character and the nature of the relationship of the United States to such land upon condemnation would be a question of federal law. Apparently there are no federal cases passing upon the question of whether the condemnation of land by the United States gives it the status of a purchaser within the scope of state statutes relating to the matter of tax liens as between vendors and purchasers. In the case of Helvering v. Johnson County Realty Co., supra, the United States Court of Appeals was of the view that the Iowa statute in question had reference only to the rights of vendor and purchaser inter sese.

■ In the conventional vendor-purchaser situation, it makes no difference to the taxing authority who pays the real estate taxes on a tract of land as that authority may look to the land for the satisfaction of its lien irrespective of the relative obligations of the vendor and purchaser inter sese. A purchaser who is affected by the enforcement against his property of a tax lien which his vendor owed him the duty to pay has rights against his vendor under Section 445.30. He has, however, no right to a release of the lien by the taxing authority. In the present case the fund paid into court by the United States stands in place of the land. It would seem that the taxing authority in enforcing its tax lien should stand in the same relationship to that fund as it did to the land and it would seem only just that since the security of the taxing authority for the payment of

taxes due it is not affected by the vendor-purchaser statute (Section 445.30) in the conventional vendor-purchaser situation its security for the payment of the taxes should not be prejudiced because of the condemnation of the land. It was heretofore noted that Woodbury County cannot now enforce any lien against the condemned land for the taxes in question because it has passed into the ownership of the United States. The former owner is not personally liable for the payment of those taxes. Therefore, if those taxes are not payable out of the fund in the registry of this Court, those taxes cannot be collected and the public revenue would suffer accordingly.

It would seem that the Iowa General Assembly in enacting Section 445.30 supplied a fixed and suitable date for settling the liability for real estate taxes between conventional vendors and purchasers. The General Assembly determined December 31 to be a convenient date for this purpose. There is no apparent reason to assume that the General Assembly in choosing such date for the purpose indicated intended to postpone the attachment of a lien for real estate taxes to the detriment of the revenue. Such a lien could properly be expected to attach as soon as the tax was levied in order to provide maximum security for the collection of the tax.

It would seem that another distinction should be noted between the conventional vendor-purchaser situation and a taking by condemnation. In the former situation, it is probable that in the negotiations of the parties as to the purchase price the item of taxes will be given consideration and a purchaser who is to acquire property subject to a lien for taxes will naturally pay somewhat less than an otherwise full purchase price. When the United States condemns land, the award does not include or provide for any adjustment because of tax liens or other liens. See United States v. 25.936 Acres of Land, 3 Cir., 1946, 153 F.2d 277, 279; South Carolina Public Service Authority v. 11,754.8 Acres of Land, 4 Cir., 1941, 123 F.2d 738, 741.

The Iowa Supreme Court and the United States Court of Appeals for this circuit are of the view that Section 445.30 has to do with the rights and liabilities inter sese between the vendor and purchaser. In the present case the United States, having paid the compensation for the tract in question into court, had no interest in the matter of the payment of tax liens. Such liens were payable out of the amount paid into court. Therefore, the United States has no inter sese interest with the former owners as to the payment of such liens. The only inter sese interest as to the payment of the taxes is between the former owners and Woodbury County. Section 445.30 does not purport to deal with the matter of tax liens as between an owner and the taxing authority.

It is the holding of the Court that the lien for the 1960 real estate taxes attached to the property in question at the time of the levy, which was October 3, 1960. It is the further holding of the Court that such lien now attaches to the award in the registry of this Court and must be satisfied from said award.

It is hereby ordered that the claim of Woodbury County for the 1960 real estate taxes, together with interest and penalty, be paid from the $8,000 remaining in the registry of this Court and that the balance remaining after such payment be distributed to the former owners of parcel number three.