UNITED STATES of America,
Plaintiff,

v.

NINE PARCELS OF LAND Located IN
the CITY OF GRAND FORKS, COUN-
TY OF GRAND FORKS, STATE OF
NORTH DAKOTA, and Vernon R.
Thoreson, et al., and Unknown Owners,
Defendants.

Civ. No. 3875.

United States District Court
D. North Dakota,
Northeastern Division.

Feb. 18, 1963.

Richard V. Boulger, Asst. U. S. Atty., Fargo, N. D., for plaintiff.

James E. Leo, Grand Forks, N. D., for defendants, Herb Kearns, May C. Kearns, Rudolph Kraemer and Violet Mae Kraemer.

Daniel S. Letnes, of Letnes, Hansen & Murray, Grand Forks, N. D., for defendants, George G. Guttu and Clara Guttu.

Robert Vaaler, of Stokes, Vaaler, Gillig & Warcup, Grand Forks, N. D., for defendants, C. C. Olson and Leonard Zimmer.

RONALD N. DAVIES, District Judge.

On May 3, 1961, the United States commenced proceedings for condemnation of nine parcels of land located in the City of Grand Forks, North Dakota. On the same date a declaration of taking was filed, agreeable to 40 U.S.C.A. § 258a,

declaring that the taking of the nine parcels was necessary for use by the Plaintiff to provide postal facilities. The Plaintiff deposited in the registry of this Court the amount of estimated just compensation for the parcels.

On February 21, 1961, judgment was entered, fixing the just award and compensation for the taking of Parcels Nos. 2, 3, 4 and 5, respectively; and an order was entered distributing the said amounts to the proper Defendants and former owners. We are not here concerned with those four parcels.

On May 8th, 1962, pursuant to stipulation, judgment was entered fixing the just award and compensation for Parcel No. 1, the Court retaining jurisdiction for the entry of such further orders, judgments or decrees as might be necessary.

On June 26, 1962, the Plaintiff recommended to the Court payment to the Grand Forks City Auditor the amount of special assessments levied against Parcel No. 1 and the payment of the balance of the stipulated amount of the just award and compensation to the Defendants and former owners. The Court so ordered.

On July 21, 1962, the Defendants and former owners of Parcel No. 1 filed motion to vacate and set aside the order of June 26, 1962, on the grounds that neither the stipulation fixing the just award and compensation nor the judgment entered pursuant thereto contemplated the payment of certain special assessments. This motion was denied by the Court and the assessments ordered paid.

Again, pursuant to stipulation, on October 22, 1962, judgment was entered fixing the just award and compensation for Parcels Nos. 6, 7, 8 and 9, respectively, the Court again retaining jurisdiction.

On December 5, 1962, pursuant to the recommendation of the Plaintiff, the Court ordered payment to the Grand Forks City Auditor the amount of special assessments levied against Parcel No. 7 and the payment of the balance of the

stipulated just award and compensation to the Defendants and former owners.

Following this on January 11, 1963, motion was made to vacate and set aside this Court's October 22, 1962, judgment on the grounds of excusable neglect in that the Defendants and former owners of Parcel No. 7 " * * * were agreeable to accepting additional compensation in the sum of $6,000.00 and before agreeing to such amount these affiants consulted with one of their Attorneys, Daniel S. Letnes, when the matter of special assessments was discussed; that affiants understood that the balance unpaid on the paving assessments must be deducted from the $6,000.00 but they were never advised nor did they investigate the matter further and did not realize that a very large assessment for parking in Grand Forks was a lien against property being taken by the [Plaintiff] * * *."

 After considerable negotiation and correspondence between the parties and just prior to the date set for trial on the merits, the Defendants and former owners stipulated to the amount that would constitute just award and compensation for the taking of Parcel No. 7. Omission or carelessness on the part of the Defendants and former owners or their counsel does not automatically constitute "excusable neglect" as contemplated by Rule 60(b) (1), Federal Rules of Civil Procedure; and the Court feels that no excusable neglect has been established as would warrant the vacating and setting aside of the judgment entered October 22, 1962. "Ignorance of those things which one is bound to know excuses not. Hale, P.C. 42; Broom, Max. 267."

Hence, the motion of January 11, 1963, to vacate and set aside the October 22, 1962, judgment entered must be denied.

On January 15, 1963, Defendants and former owners of Parcel No. 9 moved the Court for its order that no part of the amount fixed as just award and compensation for the taking of said parcels be paid to the Grand Forks City Auditor

for special assessments. On January 23rd, 1963, similar motions were made by the Defendants and former owners of parcels 6 and 8. In years prior to the taking of the parcels of land here in controversy the City of Grand Forks made assessments for the creation of parking facilities on paving districts in which the parcels were located; Parcel No. 6 in Districts Nos. 28, 40 and 4; Parcel No. 8 in Districts 40 and 4; and Parcel No. 9 in Districts 40 and 4. The special assessments were to be paid in annual installments over a period of years. The movants' position here is that although the general rule is that valid tax liens against any land taken by condemnation must be satisfied from the award, special assessments are not taxes and are to be paid by annual installments over a period of years and that, therefore, a lien does not attach until the City Auditor certifies to the County Auditor the amount of each annual installment due on January 1 of each year.

The Government, on the other hand, contends that the special assessments became liens upon the property from the time the assessment lists were approved by the governing body until the assessments are paid in full.

The crucial question here is whether the special assessments in question were liens against the parcels before or after the taking of the property by the United States. If they were liens from the time the assessments were levied until paid, then Grand Forks is entitled to satisfaction from the just award and compensation. On the other hand, if they were liens only as to the annual installments as certified by the City Auditor of Grand Forks prior to the time of taking, then Grand Forks is entitled to satisfaction only to that extent.

40 U.S.C.A. § 258a(1), provides, among other things, that the Court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance and other charges, if any, as shall be just and equitable. This statute has been construed to hold that local law must be consulted to determine the question of tax liability and attachment of liens. Collector of Revenue Within and For The City of St. Louis, Mo., v. Ford Motor Company, 158 F.2d 354. (8th Cir., 1946).

So far as it is germane to the problem here presented, the following chapters are cited from the North Dakota Century Code:

Chapter 40–24–01 provides: "A special assessment, together with all interest and penalties which accrue thereon, shall be and remain a lien upon the property upon which the assessment is levied from the time the assessment list is approved by the governing body until the assessment is paid fully. Such lien shall have precedence over all other liens except general tax liens and shall not be divested by any judicial sale. No mistake in the description of the property covered by the special assessment lien or in the name of the owner of such property shall defeat the lien if the assessed property can be identified by the description in the assessment list."

Chapter 40–24–02 provides: "All special assessments levied under the provisions of this title shall become due and payable ten days after they have been approved by the governing body and thereafter shall bear interest at a rate of not exceeding seven per cent per annum on the total amount thereof remaining from time to time unpaid."

Chapter 40–24–03 provides: "As between a vendor and vendee, all special assessments upon real property for local improvements, from and after the first day of December after the assessments have been certified and returned to the county auditor, shall be and become a lien upon the real property upon which the same are assessed in the amount certified and returned, and no more."

Chapter 40–24–09 provides: "The owner of any property against which an assessment shall have been made under this title for the cost of any improvement may pay in full or in part the amount remaining unpaid and the unpaid interest accumulated thereon. The

payment in full shall discharge the lien of the assessment upon his property. The payment may be made to the county treasurer upon all installments of the assessments which have been certified to the county auditor, and may be made to the municipal treasurer upon all portions of the assessment which have not been certified. Any person desiring to pay any portion of the assessment to the municipal treasurer shall obtain from the city auditor or village clerk a certificate of the amount due upon the assessment which has not been certified to the county auditor and shall present such certificate to the municipal treasurer. The municipal treasurer shall receive and collect such amount and issue duplicate receipts, one to be delivered to the person paying the assessment and the other to be deposited with the city auditor or village clerk, who shall note upon his records the payment of the assessment."

Chapter 40–24–11 provides: "Annually, at the time of certifying to the county auditor the amount of the municipal taxes to be levied for the current year, the city auditor or village clerk, as the case may be, shall certify to the county auditor all uncertified assessments remaining in his office, together with a list of the lots and tracts of land specially assessed for any purpose provided by law, designating the purpose of the assessment, the fund to which it belongs, and the proportion of such assessment for each year against each lot."

■ After the title to the parcels here in question vested in the United States through the taking, a lien for special assessments could not be enforced against the parcels themselves since the several states are prevented from taxing the property of the United States. The just award and compensation stands in the place of the land and the rights of the taxing authority may be treated as though transferred to the award.

■ The lien upon the parcels herein having arisen at the time the assessments were levied and the assessment list approved by the City of Grand Forks, the liens were perfected prior to the commencement of this proceeding and prior to the filing of the declaration of taking by the United States on May 3rd, 1961.

The contention of the Defendants and former owners that Chapter 40–24–03 controls in that between a vendor and vendee all special assessments upon real property for local improvements from and after the first day of December, after the assessments have been certified and returned to the county auditor, shall be and become a lien upon the real property upon which the same are assessed in the amounts certified and returned *and no more,* is neither good law nor good logic.

The Court has been unable to find any case, either Federal or state, passing upon the question of whether the condemnation of land by the United States gives rise to a vendor-vendee relationship nor have counsel for any of the parties herein cited any.

In United States v. 3 Parcels of Land in Woodbury County, Iowa, D.C., 198 F.Supp. 529, 533, 536, the Court said:

"Ordinarily it is not a matter of concern to the taxing authority whether or not the lien actually attaches at an earlier date than is specified in Section 445.30, since the lien follows the property from grantor to grantee. The taxing authority is ordinarily not interested in asserting such a lien until taxes have become delinquent in the following year. It is only in the infrequent situation where the property falls into exempt hands before December 31 that it makes any difference to the taxing authority at what time the lien attaches.

\* \* \* \* \* \*

"In the conventional vendor-purchaser situation, it makes no difference to the taxing authority who pays the real estate taxes on a tract of land as that authority may look to the land for the satisfaction of its lien irrespective of the relative obligations of the vendor and purchaser

inter sese. A purchaser who is affected by the enforcement against his property of a tax lien which his vendor owed him the duty to pay has rights against his vendor under Section 445.30. He has, however, no right to a release of the lien by the taxing authority. In the present case the fund paid into court by the United States stands in place of the land. It would seem that the taxing authority in enforcing its tax lien should stand in the same relationship to that fund as it did to the land and it would seem only just that since the security of the taxing authority for the payment of taxes due it is not affected by the vendor-purchaser statute (Section 445.30) in the conventional vendor-purchaser situation its security for the payment of the taxes should not be prejudiced because of the condemnation of the land. It was heretofore noted that Woodbury County cannot now enforce any lien against the condemned land for the taxes in question because it has passed into the ownership of the United States. The former owner is not personally liable for the payment of those taxes. Therefore, if those taxes are not payable out of the fund in the registry of this Court, those taxes cannot be collected and the public revenue would suffer accordingly."

While the case just cited decided the issue only as to real estate taxes, it is analogous to the situation here and has persuasive force with this Court.

I am of the opinion that a valid lien for the special assessments levied by the governing body of the City of Grand Forks attached at the time the special assessment lists were approved by the governing body. These liens, having been perfected prior to May 3, 1961, now attach to the award and just compensation paid into the registry of this Court for the taking of the parcels of land here in controversy, and the liens must be satisfied out of and from such awards and just compensation.

The attorneys for the United States will prepare and transmit through the Clerk of this Court appropriate instruments in conformance herewith.

Jurisdiction is retained for the entry of such orders, judgments or decrees as may be necessary in futuro.

It is so ordered.