## UNITED STATES *v.* ALABAMA.

No. 12, original. Argued April 28, 1941.—Decided May 26, 1941.

*Assistant Attorney General Littell*, with whom *Attorney General Jackson* and *Solicitor General Biddle* were on the brief, for the United States.

*Messrs. J. Edward Thornton* and *John W. Lapsley,* Assistant Attorneys General of Alabama, with whom *Mr. Thomas S. Lawson,* Attorney General, was on the brief, for the State of Alabama.

Mr. Chief Justice Hughes delivered the opinion of the Court.

The United States brought this suit to quiet its title to land in Macon County, Alabama. The complaint alleges that the State of Alabama is asserting liens as attaching to the land on October 1, 1936, for state and county taxes for the tax year 1937; and further that the State claims an interest in the land by reason of tax sales and the issue to the State of certificates of purchase. The Government asks a decree declaring the liens, tax sales and certificates of purchase to be invalid and enjoining the State from asserting its claims. The case was heard on bill and answer.

There are three tracts involved, which were conveyed by the owners to the United States on October 1, 1936, December 10, 1936, and March 10, 1937, respectively.

The applicable statute of Alabama [1] provides that "From and after the first day of October of each year,

---

[1] Section 372, Act No. 194, General Acts Alabama, 1935, p. 566, is as follows:

"From and after the first day of October of each year, when property becomes assessable the State shall have a lien upon each and

when property becomes assessable the State shall have a lien upon each and every piece or parcel of property owned by any taxpayer for the payment of all taxes which may be assessed against him . . . which lien shall continue until such taxes are paid." The county is to have a like lien for taxes assessed by it. These liens are made superior to all other liens and may be enforced by sale as provided in the Act.

Under the statute, the process of assessment for the tax year 1937 began on October 1, 1936. The grantors in the above mentioned conveyances, as the respective owners on that date, made their returns and in due course the tax assessor listed and valued the several tracts.[2] His

every piece or parcel of property owned by any taxpayer for the payment of all taxes which may be assessed against him and upon each piece and parcel of property real or personal assessed to owner unknown which lien shall continue until such taxes are paid, and the county shall have a like lien thereon for the payment of the taxes which may be assessed by it; and if such property is within the limits of a municipal corporation such municipal corporation shall have a like lien thereon for the payment of the taxes which may be assessed by it  These liens shall be superior to all other liens and shall exist in the order named and each of such liens may be enforced and foreclosed by sale for taxes as provided in this Act, or as other liens upon property are enforced."

The State also cites § 8874 of Article 6, Chapter 314, of the Code of Alabama, 1923, which provides:

"From and after the first day of October of each year, the state shall have a prior lien upon each and every piece or parcel of property, real or personal, for the payment of any and all taxes which may be assessed against the owner, or upon such property, during that year, for the use of the state; and the county shall have a like lien thereon for the payment of the taxes which may be assessed against such owner, or upon such property, during that year, for the use of the county; and these liens shall exist as to all lands bid in by the state at tax sales for the annual taxes thereafter assessed on the value of the property so purchased, in the event of the tax title failing."

[2] Act No. 194, General Acts Alabama, 1935, § 29, p. 274.

valuations were certified as provided by the statute to the county board of review, which by virtue of its authority to fix valuations, made the definitive assessments.[3] It appears that the board of review met on March 8, 1937, and adjourned on March 20, 1937. It also appears that the rate for state taxes had been fixed by the statute,[4] and the rate for county taxes was set on February 8, 1937, under the authority given to the court of county commissioners.[5] The school district tax was approved by the electors of the school district at an election held on June 14, 1937. The taxes for the year 1937 became payable on October 1, 1937, and became delinquent on January 1, 1938.[6] Proceedings were then instituted in the county court for the sale of the lands, and under its decrees the sales took place on June 12, 1939. The lands were sold to the State and certificates of purchase were issued accordingly.

*First.* The Government, invoking the principle that lands owned by the United States cannot be taxed by a State (*Van Brocklin* v. *Tennessee,* 117 U. S. 151), contends that the asserted liens are without validity because at the time the tracts were acquired by the United States the amount of the taxes had not been ascertained, as the values had not then been assessed and the rates of taxation had not been fixed. Therefore it is said that the taxes had not then been imposed. The argument is that the Alabama tax statute does not "impose taxes" but "secures their payment" and that unless taxes are imposed the statute has no effect. The lien, it is urged, becomes "fixed and final" only when the taxes have been ascertained "by completion of levy and assessment."

There is no question however, as the Government concedes, that the state statute purports to impose a lien as

---

[3] *Id.,* §§ 50, 72, pp. 284, 292.

[4] *Id.,* § 7, p. 263.

[5] *Id.,* § 64, p. 288.

[6] *Id.,* § 11, p. 267.

of October 1, 1936, for the taxes which by the process of assessment were to become payable for the tax year 1937. October first is fixed as the tax day, and as of that day owners are to make their returns, values are to be fixed and the taxes laid. There is no question that the State thus undertakes to create an inchoate lien upon the lands as of the tax day, a lien which is to be effective for the amount of the taxes for the ensuing year as these are fixed by the defined statutory method. This lien by the state law is made effective not only as against the owners on the tax day but also as against subsequent mortgagees and purchasers. "It follows the land in the hands of the vendee, all persons being chargeable with a knowledge of its existence." *Driggers* v. *Cassaday,* 71 Ala. 529, 534. See, also, *Swann* v. *State,* 77 Ala. 545; *State* v. *Alabama Educational Foundation,* 231 Ala. 11, 16; 163 So. 527. We find nothing in the Federal Constitution which invalidates such a statutory scheme. Subsequent lienors and purchasers have due notice of the tax liability imposed as of the tax day and of the process of assessment, and that liability, when its amount is definitely ascertained, relates back to the day specified. We recognized the validity of such a provision in *New York* v. *Maclay,* 288 U. S. 290, 292, where we observed that a tax lien created in a similar manner under a statute of New York "is effective for many purposes though its amount is undetermined. It is notice to mortgagees or purchasers, who are held to loan or purchase at their own risk if they take their mortgages or deeds before the tax has been assessed or paid." The precise decision in that case allowing priority to the United States under R. S. 3466 for debts due by an insolvent corporation over claims of the State for franchise taxes due but not assessed or liquidated until after a receivership, in no way detracted from the recognition of the effectiveness of the state law creating a lien as against mortgagees and purchasers. As the court said,

"Against mortgagees and purchasers a lien perfected afterwards may take effect by relation as of the date of the inchoate lien through which mortgagees and purchasers become chargeable with notice." *Id.,* p. 293. See also, *Osterberg* v. *Union Trust Co.,* 93 U. S. 424, 425, 428; *People* v. *Commissioners,* 104 U. S. 466, 468. Compare *Shotwell* v. *Moore,* 129 U. S. 590, 598. The lien in such a case, though inchoate on the day specified, and maturing when the extent of liability is ascertained by the statutory process, is similar in that respect, as the court said in the *Maclay* case, to the lien of a transfer tax or duty upon the estate of a decedent which is effective although the amount is ascertained after death.

Our present inquiry is whether, assuming the validity of the state statute creating a lien as of October 1, 1936, as against other subsequent purchasers, it should be deemed invalid as against the United States. The question is not whether such a lien could be enforced against the United States. The fact that the United States had taken title and that proceedings could not be taken against the United States without its consent would protect it against such enforcement. But that immunity would not be predicated upon the invalidity of the lien. If in this instance title had been taken by the United States in the summer of 1937 after the amount of the taxes had been ascertained and the respective liens were concededly valid, still proceedings against the United States could not be prosecuted without its consent.

The Government is not content with that measure of protection. The Government brings this suit in the view that it is entitled to have a marketable title and it seeks to remove the liens in question as clouds upon that title which would interfere with the disposition of the lands in the future. From that standpoint the Government asks a decree declaring the invalidity of the liens and enjoining the State from asserting any claim in the lands

either adverse to the United States or to its successors in title. We think that the United States is not entitled to that relief. The United States took the conveyances with knowledge of the state law fixing the lien as of October 1st. That law in creating such liens for the taxes subsequently assessed in due course and making them effective as against subsequent purchasers did not contravene the Constitution of the United States and we perceive no reason why the United States, albeit protected with respect to proceedings against it without its consent, should stand, so far as the existence of the liens is concerned, in any different position from that of other purchasers of lands in Alabama who take conveyances on and after the specified tax date. It is familiar practice for grantees who take title in such circumstances to see that provision is made for the payment of taxes and the Government could easily have protected itself in like manner. Finding no constitutional infirmity in the state legislation, we think that the liens should be held valid.

We make no exception of the tract conveyed to the United States on the tax day, October 1, 1936, as we think the state statute, as contended by the State, is to be deemed effective from the moment the tax day began. See *Beck* v. *Johnson*, 235 Ala. 323, 324; 179 So. 225.

*Second.* With respect to the tax sales the case has a different aspect. The proceedings in the county court for the sale of the lands were taken and the decrees were rendered after the United States had become the owner of the tracts. A proceeding against property in which the United States has an interest is a suit against the United States. *The Siren*, 7 Wall. 152, 154. The United States was an indispensable party to proceedings for the sale of the lands, and in the absence of its consent to the prosecution of such proceedings, the county court was without jurisdiction and its decrees, the tax sales and the certificates of purchase issued to the State were void. *Minnesota* v. *United States*, 305 U. S. 382, 386. While

pleading to the contrary in its answer, the invalidity of the tax sales is now conceded by the State.

The United States is entitled to a decree setting aside the tax sales and the certificates of purchase, and in other respects the complaint is dismissed.

*It is so ordered.*