[1] Reported in 299 N.W. 212.
Action by the state to recover taxes on gross earnings alleged to have been omitted from the returns; of the Chicago, Milwaukee, St. Paul Pacific Railroad Company for the years 1914, and 1920 to 1927. The only question for decision is whether the lien given by statute as an aid for the enforcement of delinquent gross earnings taxes relates back from the time the alleged omissions were discovered by the state administrative officials to the time when the omissions should have been returned by the company. The liability, if any, for the taxes was incurred by the defendant's predecessor in interest, the Chicago, Milwaukee St. Paul Company, which was sold to the defendant on December 31, 1927, in connection with receivership proceedings in the federal district court for the northern district of Illinois. Since that transfer to the defendant was "free and clear of and from any charge or claim except the lien of taxes and assessments lawfully levied or assessed" against the property, the state cannot succeed in this action unless the lien can be given retroactive effect. The question reaches us on appeal from an order overruling the state's demurrer to the answer with a certification by the trial judge that the question is important and doubtful.
It would seem almost unnecessary to restate that the "inceplion, continued existence, and duration" (State v. Bellin, 79 Minn. 131, 134, 81 N.W. 763, 764) of the lien for gross earnings taxes is entirely statutory. And yet this most elemental proposition stands in opposition to the position advanced by the state. We think that brief consideration of the gross earnings tax law (1 Mason Minn. St. 1927, § 2233, etseq.) will demonstrate that the state supports an unsound proposition.
Precedent to the final liability of a railroad under the gross earnings law, the following steps are taken: A return is required to be filed with the Minnesota tax commission[2]
"containing a true *Page 486 
and just report of the gross earnings" (§ 2233) for each six-months period. (§ 2246.) The tax commission is required to "inspect and verify each report and assess the earnings as shown thereon with the amount of taxes due, and certify the amount of such earnings and taxes to the state auditor, who thereupon shall make his draft" on such railroad "for the amount of the taxes due as thus certified, and place said draft in the hands of the state treasurer for collection." (§ 2234.) With respect to the omitted earnings here in question, the certification thereof with the amount of the tax and penalties first occurred on July 11, 1930, as to some items, and again on February 19, 1932, as to the balance. On the former date, the properties had belonged to the defendant for over two years. Next follows the provision upon which the state must rely in support of its claim that the tax as assessed relates back to the time when the original report in each of the years was filed by the defendant's predecessor. So far as material, § 2238 provides:
"Such delinquent and unpaid tax and penalties, assessed and certified by the Minnesota tax commission, as provided in sections 3 [§ 2235] and 4 [§ 2237] hereof, shall be a lien upon all and singular, the property, estate and effects of any such company, * * * and shall take precedence of all demands and judgments against the same."
Nothing in this section indicates that a lien for delinquent taxes reverts to a previous time. Though this section does not say that delinquent and unpaid taxes when "assessed and certified" by the commission shall be a lien, yet the presence of this condition must be taken as a requirement precedent to the arising of a lien. Until there has been an assessment and certification, there can be no lien. Important to notice is the fact that such assessment and certification is made applicable by § 2238 only to those taxes and penalties which are "delinquent and unpaid." Accurately speaking, until taxes are "delinquent and unpaid," there can be no lien under § 2238. Thus in the normal case, where the taxpayer has *Page 487 
paid the tax within the time allowed by law after a demand from the treasurer, there would be no lien upon the property of the taxpayer. There is nothing in the record which indicates that defendant's predecessor was ever delinquent as to any of the taxes assessed upon the gross earnings contained in the returns from which earnings are here alleged to have been omitted. Patently, therefore, a contention that the legislature intended to refer the lien here arising upon the assessment and certification by the commission back to an event when there was no lien is wholly specious and unrealistic. Cf. United States v. Alabama, 313 U.S. 274, 61 S.Ct. 1011, 85 L. ed. 1327.
The state argues that a legislative intention to relate the lien back to the time when the original returns were filed may be drawn from a previous section relating to unreported earnings. Whenever a taxpayer has failed to report any gross earnings, provision is made by § 2237 for examination of his records. Upon the basis of this information, the tax commission "shall fix the amount of such gross earnings and assess the tax thereon * * * making official entry thereof and certify the amount thereof * * * to the state auditor." Reliance is placed upon the sentence which reads: "Such entry [of the commission] shall stand in place of the report required by law to be made by" the delinquent taxpayer. The argument is that this sentence indicates that the lien is effective from the date when the taxpayer's report should have been filed. However, this contention must fail for the very evident reason that the statute does not create a lien contemporaneous with the filing of gross earnings where the taxpayer has complied with the law by filing a full and accurate report. How, then, can a lien arise when the report is incomplete? Whether the taxpayer files a return upon which the taxes become delinquent or has one made for him by the commission for taxes which are delinquent, the lien thereon cannot arise until the fact of delinquency and nonpayment has been certified to the auditor. Therefore, there is no previous date to which the entry of the commission *Page 488 
can refer. Cf. United States v. Alabama, 313 U.S. 274,61 S.Ct. 1011, 85 L. ed. 1327. If further corroboration of the correctness of this view were needed, it would be found in an examination of § 2240, which prescribes that the tax commission shall proceed with reference to omitted earnings discovered by the public examiner exactly as in § 2237 with respect to nonreporting taxpayers. This indicates very clearly that omitted earnings were regarded by the legislature as independent from the original return containing the earnings for which the tax has already been paid.
The Minnesota cases cited by the state have been examined, but we believe it is entirely unnecessary to discuss them because they are controlled wholly by the particular statutes there involved. We find nothing in the gross earnings tax law which indicates that the lien which arises from the assessment and certification of the taxes and penalties upon omitted earnings is retroactively effective to any previous date. Certainly the state can claim no lien upon the property of the defendant by virtue of Sp. L. 1873, c. 111, § 1. This has long since ceased to be the law, both by its inconsistency with L. 1903, c. 253, § 1, approved by the voters in 1904 (see R. L. 1905, § 1003; State v. Minnesota Intl. Ry. Co. 106 Minn. 176,180, 118 N.W. 679, 1007, 16 Ann. Cas. 426; State v. G. N. Ry. Co. 106 Minn. 303, 321, 119 N.W. 202), and by specific repeal by R. L. 1905, c. 108, §§ 5537 and 1538, of L. 1887, c. 11, and L. 1889, c. 235, which had extended the application of the 1873 law to all railroad companies, foreign and domestic. The defendant having a good defense to the action brought by the state, the demurrer to the answer was properly overruled.
Order affirmed.
MR. JUSTICE PETERSON took no part in the consideration or decision of this case.
[2] Under the reorganization act of 1939 (L. 1939, c. 431, art. VI, § 3, 3 Mason Minn. St. 1940 Supp. § 2362-3), the commissioner of taxation has succeeded to the powers and duties of the Minnesota tax commission. *Page 489