ALLEN, County Treas., v. HENSHAW et al.

No. 31621. Feb. 19, 1946.

Rehearing Denied May 7, 1946.

*168 P. 2d 625.*

Randell S. Cobb, Atty. Gen., Fred Hansen, First Asst. Atty. Gen., James W. Bounds, Asst. Atty. Gen., and O. C. Barnes, County Attorney, Marshall County, of Madill, for plaintiff in error.

Reuel W. Little and Jack H. Smith, both of Madill, for defendants in error.

Potterf, Gray & Poindexter, of Ardmore, amici curiae.

GIBSON, C.J. The county treasurer of Marshall county appeals from an order and judgment of the district court granting a peremptory writ of mandamus at the suit of defendants in error commanding him to pay over to them certain condemnation money held pursuant to order of the United States District Court.

The controversy reached the state court as an incident to condemnation proceedings instituted by the United States in the United States District Court for the Eastern District of Oklahoma against the landowners herein, and their lands which are located with-

in the area of the Red River dam project.

Said lands were condemned and title thereto taken by the United States on or near March 15, 1943, pursuant to 40 U. S. C. A. 258-a. Awards were made by the court, and checks therefor ordered to issue payable jointly to the county treasurer and the individual landowner in each case in order that the treasurer might retain sufficient of the funds to pay any taxes then existing against the property.

In so ordering the checks made payable to joint payees, the court based its authority upon the provision contained in the above section as follows: "The court shall have power to make such orders in respect of encumbrances, liens, rents, taxes, assessments, insurance, and other charges, if any, as shall be just and equitable."

After the checks reached the county treasurer he proceeded to make an estimate of the 1943 ad valorem taxes on the lands and reserved the amount so estimated in each case and paid the balance to the landowners, and at the same time delivered to each of them a certificate evidencing the owner's right to claim any balance remaining after payment of the 1943 taxes.

The landowners promptly protested, saying that any potential taxes based upon the 1943 assessments had not attached to their lands at the time they were taken by the Government, and that the treasurer was without authority to retain any of the condemnation award in payment thereof.

The dispute went back to the United States District Court, whereupon that court rendered a memorandum opinion, based on certain precedent, relegating the landowners to the proper state court for a determination of the question as one of particular concern to the state and of appropriate settlement by its courts.

The United States court was apparently of the opinion that the potential taxes for 1943 could not be retained by the county treasurer unless they had become a lien on the land before the United States acquired title on March 15, 1943. This is reflected by the court's statement contained in the memorandum, as follows:

"Specifically, the question is:

"When, under Oklahoma law, do taxes upon real property become a lien? Does the lien attach as of January 1, July 1, or October 1? Specifically are 1943 taxes a lien upon real property on March 15, 1943,—the date of taking said property by the United States in condemnation proceedings?"

In their petition in the instant case the landowners alleged that at the time the property was taken by the Federal Government no taxes for 1943 had actually been levied thereon, and, under the law, none would be levied until October or November. And further, no taxes could be levied in that the property would belong to the Government. They prayed for an order requiring the county treasurer to turn the money in question over to them.

The trial court held that the plaintiffs, at the time the property was taken, were not in any way obligated to pay the 1943 taxes, and granted the writ commanding the treasurer to pay the money over to them.

The treasurer appeals, resting his right to resist plaintiffs' claim upon the proposition that since real property is assessed as of January 1st for the purpose of raising revenue for the ensuing fiscal year, the tax liability is fixed as of that date, and an inchoate lien for such taxes attaches at the same time which is not affected by the subsequent transfer of the property. And, further, since all liens and encumbrances must be satisfied out of the condemnation award, the tax obligation for the fiscal year 1943-1944 was upon the condemnees; that the tax lien cannot follow the land into the hands of the Federal Government.

As authority for the above statement that taxes become a lien on January 1st, defendant treasurer cites 68 O. S. 1941 §§ 15.8, 353; Board of Commissioners of Comanche Co. v. Central Baptist Church, 136 Okla. 99, 276 P. 726; In re Sinclair Prairie Oil Co., 175 Okla. 289, 53 P. 2d 221; United States v. Alabama, 313 U. S. 274, 85 L. Ed. 1327; and cases from other jurisdictions.

Plaintiffs rely mainly on 68 O. S. 1941 § 15.5 as the only statute actually fixing the date on which tax liens shall first attach to real property. The section fixes that date as October 1st, the same date on which taxes become due and payable on the assessment of the preceding January (68 O. S. 1941 § 351). Said section 15.5, so far as it relates to land, reads as follows:

"As between grantor and grantee of any land where there is no express agreement as to who shall pay the taxes that may be assessed thereon, taxes on any real estate shall become a lien on such real estate on the 1st day of October of each year, and if such real estate is conveyed after said date the grantor shall pay such taxes, and if conveyed on or prior to October 1st of such year the grantee shall pay such taxes."

By reason of that provision, it is urged, the tax lien actually did not attach until October 1st, long after title had passed from the plaintiffs to the Federal Government; that as a result, the federal district court was without power, and did not assume power, to charge the landowners with the future taxes. The condemnation award, it is said, did not contemplate or take into account such taxes. Johnston v. Mohrabacker, 118 Okla. 244, 247 P. 389; First National Bank v. Scott, 119 Okla. 106, 249 P. 282; Board of County Commissioners v. State Board of Equalization, 155 Okla. 183, 8 P. 2d 732.

Plaintiffs contend that in cases such as this the question of paying future taxes, taxes falling due and becoming a lien on the land subsequent to transfer of title to the United States, is a matter to be adjusted between the United States and the state. United States v. Alabama, supra.

In this state the taxable status of land becomes fixed as of the day designated as assessment day by the statute. That day is January 1st (sec. 15.8, supra). In re Sinclair Prairie Oil & Gas Co., supra.

In First National Bank v. Scott, supra, the court said in effect that the tax lien ordinarily attaches to land on the date taxes become due, but, as between grantor and grantee, the lien attaches on the day specifically designated by the statute. Since that case arose the statutes have been amended, making the day in both instances the same, October 1st (secs. 351, 15.5, supra).

The question as to when the lien attached was actually not present in that case, as was said in the Baptist Church case, above, but the statement is correct nonetheless.

In event of sale of real property, and in the absence of an agreement to the contrary, the statute, sec. 15.5, supra, makes the grantee assume the taxes if the sale occurs before October 1st; if it occurs subsequent to that day, the grantor is responsible to the grantee for payment of taxes.

For the purposes of such sale the lien of the current taxes attaches as of October 1st, even though the proceedings for the assessment of the property and the levying of the tax thereon may not be completed until a later date.

The exercise of the right of eminent domain is in effect a compulsory sale of the owner's interest in the property sought to be appropriated. 29 C. J. S. 780; 18 Am. Jur. sec. 112, p. 739; Buckhout v. New York, 68 N. E. 659, 661, 176 N. Y. 363; Jackson v. State, 106 N. E. 758, 213 N. Y. 34, 35; L. R. A. 1915D, 492, Ann. Cas. 1916C, 779;

Vandermulen v. Vandermulen, 108 N. Y. 195, 15 N. E. 383; Charleston & W. C. Ry. Co. v. Hughes, 105 Ga. 1, 30 S. E. 972, 70 Am. St. Rep. 17; American Creameries Co. v. Armour & Co., 149 Wash. 690, 271 P. 896.

If the landowners had conveyed their properties to the United States by their warranty deeds on March 15th, the United States would hold those properties subject to the lien of the 1943-1944 taxes (U. S. v. Alabama, supra). Was it intended that the United States would get a greater or better title by compulsory sale? We think not. Undoubtedly it was not the intention of Congress to compel a landowner to pay a tax which he would not be obliged to pay under our state statutes in a voluntary sale.

There is authority for holding that the tax burden or lien continued right on notwithstanding the condemnation of the land by the United States. The fact that the taxes may not be collected from the United States or the lien thereof foreclosed without the consent of that Government is without material concern in this case.

A very similar tax situation was under consideration in United States v. Alabama, supra. There the court defined the tax burden as an inchoate lien attaching as of the date of assessment. In that case the United States purchased certain lands after assessment day but before final levy. The court held that the fact that the purchaser was the United States did not invalidate the lien, but that the lien could not be enforced against the United States without its consent.

The landowners involved here were done with the lien when the lands passed out of their hands prior to October 1, 1943. They made no agreement to pay the taxes for the ensuing fiscal year, and no personal obligation to pay the same could attach to them without such an agreement. And there is no law in this state to justify a judgment in any court fixing the liability upon them. Nor is there a statute in this state authorizing the county treasurer to collect potential taxes by estimating the amount thereof, or otherwise. This is not out of line with justice, for taxes on realty do not constitute a personal obligation; and owners of realty should not be required to pay taxes for a future year for which they receive no governmental protection in return therefor.

If it be said that the taxes in the instant case constituted an inchoate lien on the land, it was not one that could be ascertained as to amount, and paid and discharged by the owner prior to the transfer to the Government; and not one for which the transferror, or condemnee, could be held personally liable without his consent (sec. 15.5, supra). Our statutes cannot be interpreted otherwise, and they are paramount.

Under our statutes the landowners in this case cannot be compelled, in the absence of consent, to pay taxes of this character.

The judgment of the trial court is affirmed.

OSBORN, WELCH, DAVISON, and ARNOLD, JJ., concur. HURST, V.C.J., and RILEY, BAYLESS, and CORN, JJ., dissent.