Filed 9/17/13 (unmodified opn. follows)

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TEARLACH RESOURCES LIMITED et al., <br><br> Cross-complainants and Appellants, <br><br> v. <br> WESTERN STATES INTERNATIONAL, INC., et al., <br><br> Cross-defendants and Respondents. | F065511 <br><br> (Super. Ct. No. S-1500-CV-264931) <br> Kern County |
| WEATHERFORD ARTIFICIAL LIFT SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br> GAS AND OIL TECHNOLOGIES, INC., et al., <br><br> Defendants. | (Super. Ct. No. S-1500-CV-266707) <br> Kern County <br><br> **ORDER MODIFYING OPINION** <br> **[CHANGE IN JUDGMENT]** |

It is ordered that the opinion filed herein on September 10, 2013, be modified as follows:

On page 20 of the opinion under the disposition:  the amended judgment date should be "March 2, 2011."

This modification changes the judgment.

HILL, P. J.

WE CONCUR:

CORNELL, J.

FRANSON, J.

Filed 9/10/13 (reposted 9/13/13 to conform caption to filed opn. and docket; no change to opn. text)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| TEARLACH RESOURCES LIMITED et al., <br><br> Cross-complainants and Appellants, <br><br> v. <br> WESTERN STATES INTERNATIONAL, INC., et al., <br><br> Cross-defendants and Respondents. | F065511 <br><br> (Super. Ct. No. S-1500-CV-264931) <br> Kern County |
| WEATHERFORD ARTIFICIAL LIFT SYSTEMS, INC., <br><br> Plaintiff, <br><br> v. <br> GAS AND OIL TECHNOLOGIES, INC., et al., <br><br> Defendants. | (Super. Ct. No. S-1500-CV-266707) <br> Kern County <br><br> **OPINION** |

APPEAL from a judgment of the Superior Court of Kern. David R. Lampe, Judge.

Law Offices of Richard D. Farkas and Richard D. Farkas for Cross-complainants and Appellants.

Law Offices of Huskinson, Brown & Gorman, A. Alexander Gorman and David W. T. Brown for Cross-defendants and Respondents.

-ooOoo-

1.

This is an appeal by the assignee of an oil and gas lease on federal land from the dismissal of its action against the assignor and others. The dismissal was entered after the trial court vacated the amended judgment in the assignee's favor on the ground the trial court lacked subject matter jurisdiction, because federal courts have exclusive jurisdiction to adjudicate rights in the lease. We conclude the matter presented only issues concerning the contractual relationship between the parties and tort claims; the interests of the United States were not implicated in the litigation and the jurisdiction of the federal courts was not exclusive. Accordingly, we reverse.

## *FACTUAL AND PROCEDURAL SUMMARY*

This case arises out of an assignment of an interest in certain mineral leases. Western States International, Inc. (Western States) and Gas and Oil Technologies, Inc. ((Gas & Oil), now known as United Pacific Energy Corporation (UPEC)) entered into an agreement to sell and assign a 60 percent interest in certain oil and gas leases to Tearlach Resources (California) Limited (Tearlach California), a wholly owned subsidiary of Tearlach Resources Limited (Tearlach), a Canadian corporation. Some of the leases were for oil and gas rights on land owned by the United States government, leased pursuant to the MLA (or the Act).[1] Subsequently, Weatherford Artificial Lift Systems, Inc. sued Gas and Oil, Western States, and Tearlach California, alleging Gas and Oil leased two pumping units from Weatherford for use at its wells, but defaulted in payment; it alleged Western States and Tearlach held some interest in the leasehold of the wells. Weatherford sought judgment for the amount owed and foreclosure of an oil and gas lien.

Gas and Oil and Western States cross-complained against Tearlach California, then initiated their own separate action against Tearlach, Tearlach California, and two of Tearlach's corporate officers, Malcolm Fraser and Charles Ross. The Western States

---

[1] The Mineral Leasing Act of 1920 (30 U.S.C. § 181, et seq.).

parties'[2] first amended cross-complaint and first amended complaint made similar allegations: They entered into a written letter agreement with Tearlach in which Tearlach agreed to purchase a 60 percent interest in the oil property known as the North Kern Front. Because Tearlach was not a United States corporation, the assignment could not legally be made to it, so Fraser and Ross formed Tearlach California to hold the assigned interest in the leases. The Western States parties were induced by the fraudulent representations of Fraser and Ross to make the assignment. The Western States parties alleged the leases included a combination of privately owned leases and leases owned by the United States government and managed by the Bureau of Land Management (BLM).

In the Western States parties' action, Tearlach, Tearlach California, Fraser, and Ross filed a cross-complaint against Western States, UPEC, and their officers and principal shareholders, Ingrid Aliet-Gass, David Smuskevietch, and Glenn Morinaka. The Tearlach cross-complaint alleged cross-defendants fraudulently induced cross-complainants to enter into the letter agreement to purchase a 60 percent interest in the oil property. It alleged causes of action for breach of contract, breach of the covenant of good faith and fair dealing, fraud, negligence and negligent misrepresentation, declaratory relief, an accounting, constructive trust, and conversion.

The Western States parties' action and the Weatherford action were consolidated. Tearlach filed a motion to domesticate a foreign judgment, asking that the court enter judgment in its favor and against the Western States parties based upon an $18 million judgment Tearlach had obtained against the Western States parties in Canada. According to Tearlach, the Canadian judgment was based on the same transaction and allegations of fraud presented in the consolidated cases. The motion was denied. The Tearlach parties[3] also filed a motion for summary judgment, again seeking entry of judgment based on the Canadian judgment. That motion also was denied.

---

[2] "Western States parties" refers to Western States, Gas and Oil, and UPEC.

[3] "Tearlach parties" refers to Tearlach, Tearlach California, Fraser, and Ross.

A week before the trial date, the attorney for the Western States parties filed an ex parte application to be relieved as counsel. The application was granted. The Western States parties did not appear for trial. The trial court took evidence and, on February 1, 2011, entered judgment in favor of the Tearlach parties and against the Western States parties and Aliet-Gass on both the Western States parties' cross-complaint and the Tearlach parties' cross-complaint; it awarded the Tearlach parties damages in excess of $18 million. On March 2, 2011, the trial court entered an amended judgment adding a declaration that Western States transferred to Tearlach California, effective on or before December 13, 2006, a 60 percent working interest in the oil and gas property known as the Kern Front Field, including the Witmer A, B West, and Sentinel A lease, and the Mitchell lease.

Nine months later, on December 16, 2011, the Western States parties and Aliet-Gass moved to vacate the amended judgment and dismiss the Tearlach parties' cross-complaint, asserting the judgment entered by the trial court was void. They argued the trial court lacked subject matter jurisdiction to adjudicate the claims made in that pleading because the federal courts have exclusive jurisdiction of claims involving ownership of interests in federal mineral leases. The trial court granted the motion to vacate the amended judgment. It denied the Tearlach parties' motion for reconsideration and dismissed their cross-complaint on the ground the trial court lacked subject matter jurisdiction of the claims it contained. The Tearlach parties appeal from the dismissal of their cross-complaint.

## DISCUSSION

### I.     Vacating Judgment

"The court may … on motion of either party after notice to the other party, set aside any void judgment or order." (Code Civ. Proc., § 473, subd. (d).) The statute does not place any time limit on bringing such a motion. Additionally, the court has equitable power to set aside a void judgment at any time. "'It is well settled that a judgment or

4.

order which is void on its face, and which requires only an inspection of the judgment-roll or record to show its invalidity, may be set aside on motion, at any time after its entry, by the court which rendered the judgment or made the order. [Citations.]' [Citations.]" (*Reid v. Balter* (1993) 14 Cal.App.4th 1186, 1194.) "'A judgment absolutely void may be attacked anywhere, directly or collaterally whenever it presents itself, either by parties or strangers. It is simply a nullity, and can be neither a basis nor evidence of any right whatever.'" (*Andrews v. Superior Court of San Joaquin County* (1946) 29 Cal.2d 208, 214–215.)

We reject the Tearlach parties' arguments that the Western States parties and Aliet-Gass failed to meet the requirements for vacating a judgment under Code of Civil Procedure section 473, subdivision (b), and that the motion was untimely. The motion to vacate was not based on subdivision (b) of that section, which applies to judgments entered through a party's mistake, inadvertence, surprise or excusable neglect. The motion was brought pursuant to subdivision (d) of that section and the court's inherent power to set aside a void judgment. Neither the substantive requirements nor the time requirements of subdivision (b) applied to the motion. The issue before this court is whether the trial court correctly determined that the judgment was void for lack of subject matter jurisdiction, warranting vacation pursuant to either Code of Civil Procedure section 473, subdivision (d), or the trial court's inherent power to vacate a void judgment.

## II. Subject Matter Jurisdiction

### A. *Standard of review*

Questions of subject matter jurisdiction are questions of law, which are reviewed de novo. (*Belleri v. United States* (2013) 712 F.3d 543, 547; *Robbins v. Foothill Nissan* (1994) 22 Cal.App.4th 1769, 1774.)

### B. *Federal and state jurisdiction*

"'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.' [Citation.]" (*Gunn v. Minton* (2013) __ U.S.

5.

\_\_\_, 133 S.Ct. 1059, 1064.) The United States Constitution provides that the federal judicial power "shall extend to all Cases, in Law and Equity, arising under this Constitution, [and] the Laws of the United States" and "to Controversies to which the United States shall be a Party." (U.S. Const., art. III, § 2, cl. 1.) The grant of power in the Constitution is not self-executing, however; Congress must define the controversies over which the federal courts may exercise jurisdiction. (*Merrell Dow Pharmaceuticals, Inc. v. Thompson* (1986) 478 U.S. 804, 807–808; *Stevenson v. Fain* (1904) 195 U.S. 165, 167.) Congress has authorized federal courts to exercise original subject matter jurisdiction in many actions, including "all civil actions arising under the Constitution, laws, or treaties of the United States" (28 U.S.C. § 1331), civil actions commenced by the United States (*id.* § 1345), certain civil actions brought against the United States for damages (*id.* § 1346(a)(2)), and civil actions "to quiet title to an estate or interest in real property in which an interest is claimed by the United States" (*id.* § 1346(f)).

State courts often have concurrent jurisdiction of federal claims. "In considering the propriety of state-court jurisdiction over any particular federal claim, the Court begins with the presumption that state courts enjoy concurrent jurisdiction. [Citations.] Congress, however, may confine jurisdiction to the federal courts either explicitly or implicitly. Thus, the presumption of concurrent jurisdiction can be rebutted by an explicit statutory directive, by unmistakable implication from legislative history, or by a clear incompatibility between state-court jurisdiction and federal interests. [Citations.]" (*Gulf Offshore Co. v. Mobil Oil Corp.* (1981) 453 U.S. 473, 478.)

In *Yellow Freight System, Inc. v. Donnelly* (1990) 494 U.S. 820 (*Yellow Freight*), the court considered whether federal courts had exclusive jurisdiction of civil actions brought under Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e, et seq. (Title VII)). The court stated: "Under our 'system of dual sovereignty, we have consistently held that state courts have inherent authority, and are thus presumptively competent, to adjudicate claims arising under the laws of the United States.' [Citations.] To give

6.

federal courts exclusive jurisdiction over a federal cause of action, Congress must, in an exercise of its powers under the Supremacy Clause, affirmatively divest state courts of their presumptively concurrent jurisdiction. [Citation.]" (*Yellow Freight, supra,* 494 U.S. at p. 823.) The text of Title VII did not divest state courts of jurisdiction. It provided that the federal district courts "'shall have jurisdiction of actions brought under this subchapter.' [Citation.]" (*Yellow Freight,* at p. 823.) However, "[u]nlike a number of statutes in which Congress unequivocally stated that the jurisdiction of the federal courts is exclusive, Title VII contains no language that expressly confines jurisdiction to federal courts or ousts state courts of their presumptive jurisdiction. The omission of any such provision is strong, and arguably sufficient, evidence that Congress had no such intent." (*Id.*, fn. omitted.)

The court concluded the legislative history of Title VII did not demonstrate an intent by Congress to make federal jurisdiction exclusive. (*Yellow Freight, supra,* 494 U.S. at pp. 824–825.) Further, there was no incompatibility between Title VII's procedures and state court jurisdiction. (*Id.* at p. 825.) The court had "no reason to question the presumption that state courts are just as able as federal courts to adjudicate Title VII claims." (*Id.* at p. 826.) Accordingly, the court held the presumption of concurrent state court jurisdiction had not been overcome. (*Ibid.*)

The Western States parties cited nothing in the MLA making jurisdiction of the federal district courts exclusive. In their brief, they argue cancellation or forfeiture of leases can only be done in United States district court, citing 30 United States Code section 188(a). That section, however, merely states "any lease issued under the provisions of this Act may be forfeited and canceled by an appropriate proceeding in the United States district court." It does not state that such an action "must" be filed in federal court, or that the jurisdiction of the district courts is exclusive. In any event, this action did not involve forfeiture or cancellation of a lease, and the Western States parties

7.

have not cited any provision of the Act that grants federal courts exclusive jurisdiction of disputes between the parties to an assignment of an interest in an oil and gas lease.

Although the Western States parties' motion to vacate the judgment and dismiss the Tearlach parties' cross-complaint argued the action was within the exclusive jurisdiction of the federal courts, it did not identify any act of Congress that conferred on the federal courts exclusive jurisdiction of the type of claims made in the Tearlach parties' cross-complaint. Instead, the motion was based directly on the provision of the United States Constitution extending judicial power to "Controversies to which the United States shall be a Party." (U.S. Const., art. III, § 2, cl. 1.) The effect of this constitutional provision, however, "is not to vest jurisdiction in the inferior courts over the designated cases and controversies but to delimit those in respect of which Congress may confer jurisdiction upon such courts as it creates. Only the jurisdiction of the Supreme Court is derived directly from the Constitution. Every other court created by the general government derives its jurisdiction wholly from the authority of Congress. That body may give, withhold or restrict such jurisdiction at its discretion, provided it be not extended beyond the boundaries fixed by the Constitution. [Citations.] The Constitution simply gives to the inferior courts the capacity to take jurisdiction in the enumerated cases, but it requires an act of Congress to confer it. [Citation.]" (*Kline v. Burke Construction Co.* (1922) 260 U.S. 226, 233–234.) Thus, the question before this court is whether Congress has enacted any statute conferring on federal courts exclusive jurisdiction of the types of claims alleged in the Tearlach parties' cross-complaint.

Federal courts have been granted jurisdiction of various civil actions against the United States, including actions alleging tort or contract claims. (See, e.g., 28 U.S.C. §§ 1346, 1491.) Jurisdiction of some types of claims is expressly made exclusive in the federal courts. For example, federal district courts have exclusive original jurisdiction of certain civil actions against the United States for money damages for personal injury or property damage allegedly caused by the negligence of a federal employee. (*Id.*

§ 1346(b)(1).)  The district courts also have exclusive jurisdiction of actions "to quiet title to an estate or interest in real property in which an interest is claimed by the United States."  (*Id.* § 1346(f).)

The United States was not a party to the consolidated actions.  None of the causes of action in the Tearlach parties' cross-complaint was alleged against the United States.  Citing *United States v. Alabama* (1941) 313 U.S. 274 (*Alabama*), the Western States parties and Aliet-Gass argue that the cross-complaint was against the United States because "[a] proceeding against property in which the United States has an interest is a suit against the United States."  (*Id*. at p. 282.)  In *Alabama*, the United States brought an action to quiet title to certain real properties it owned.  The State of Alabama had assessed taxes on the properties and, when they became delinquent, the county court sold the properties to the state and issued certificates of purchase.  Regarding the tax sales, the court stated:  "A proceeding against property in which the United States has an interest is a suit against the United States.  [Citation.]  The United States was an indispensable party to proceedings for the sale of the lands, and in the absence of its consent to the prosecution of such proceedings, the county court was without jurisdiction and its decrees, the tax sales and the certificates of purchase issued to the State were void."  (*Ibid*.)  Title to the property claimed by the United States had been directly placed in issue; the county court attempted to divest the United States of its title by conducting the tax sale of the properties and issuing certificates of purchase to the buyer.

This action is not a proceeding against property in which the United States claims an interest, as was the case in *Alabama*.  The Tearlach parties did not claim ownership of the property, nor did they challenge the title of the United States to the property.  They did not dispute the right of the United States to lease the property for purposes of extracting oil and gas from it.  The Tearlach parties' cross-complaint alleged a contract between them and the Western States parties, by which Tearlach California would acquire a 60 percent interest in the Western States parties' oil and gas leases in exchange

9.

for shares of Tearlach.  The cross-complaint alleged the Western States parties induced the Tearlach parties to enter into the contract by making false and fraudulent representations.  It alleged the Western States parties breached the contract, committed torts, and damaged the Tearlach parties by misappropriating and misusing funds and failing to pay amounts owed to the Tearlach parties, or failing to repay amounts advanced to them.  The Tearlach parties sought to recover the consideration it paid to the Western States parties under the contract, amounts it paid to protect its investment, such as expenses it paid that were the responsibility of the Western States parties, and attorney's fees.  Although the cross-complaint contained a cause of action for declaratory relief, which alleged a controversy about the parties' respective rights "in connection with the contracts, leases, and the assets which are the subject of this litigation, as well as concerning the legal status of the parties and their positions in connection with the oil and gas properties," the Tearlach parties did not dispute the title of the United States to the property or the validity of the Western States parties' lease.  The allegations of the cross-complaint concerned the obligations between private parties under their contract, as well as tort liability for fraud, negligent misrepresentation, and conversion.  The Tearlach parties did not challenge the interest of the United States in the property.

The Western States parties and Aliet-Gass contend state courts have no jurisdiction over any type of ownership interests in federal lands, whether the United States is named as a party or not.  The quote from *United States v. Fullard-Leo* (9th Cir. 1946) 156 F.2d 756, 763–764 they cite in support of this proposition, however, comes from the dissent to that opinion, and has no precedential value.  (*United States v. Romain* (1st Cir. 2004) 393 F.3d 63, 74.)  The Western States parties and Aliet-Gass also assert "the 9th Circuit has interpreted 30 U.S.C. §187 as specifically NOT granting concurrent state court jurisdiction in *Ventura County v. Gulf Oil Corp.* [(9th Cir. 1979) 601 F.2d 1080, 1085]."  *Ventura County*, *however*, did not address any issue of concurrent state and federal court jurisdiction.  The issue in that case was whether the county could

10.

impose on a lessee of federal mineral rights a requirement that the lessee obtain a county permit under its local zoning ordinances before the lessee could exercise the rights it was granted under the lease and drilling permits it acquired from the United States. The court's statement that a certain provision of 30 United States Code section 187 was "not a recognition of concurrent state jurisdiction" referred to jurisdiction to regulate mineral leases and drilling on federal land, not to the jurisdiction of federal or state courts to adjudicate claims involving federal mineral leases. (*Ventura County,* at p. 1085.)

Another case the Western States parties relied on, *Leiter Minerals, Inc. v. United States* (1957) 352 U.S. 220 (*Leiter*), also does not establish that federal courts have exclusive jurisdiction of actions between private parties, involving the assignment of an interest in mineral leases on federal land. In *Leiter*, the petitioner filed suit in a Louisiana state court against the lessees of federal mineral rights, contending its predecessor in interest reserved the mineral rights in its deed to the United States and, pursuant to Louisiana law (Louisiana Act No. 315 of 1940), the reservation of rights was imprescriptible. Petitioner sought, among other things, a declaration that it owned the mineral rights under the federal land and an accounting for the minerals removed by the lessees. The United States then filed suit against the petitioner and other interested parties in federal district court to quiet title to the mineral rights. The district court granted the request of the United States to enjoin prosecution of the state court action, and the appellate court affirmed, concluding that, under the quiet title provisions, the district court was vested with exclusive jurisdiction to determine title to the mineral rights. (*Leiter,* at p. 223.)

The court considered the propriety of enjoining the state court action in light of the federal statute prohibiting a court of the United States from granting an injunction to stay proceedings in a state court, "except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." (28 U.S.C. § 2283.) The court stated: "The suit in the federal court was the only one that

11.

could finally determine the basic issue in the litigation—whether the title of the United States to the mineral rights was affected by Louisiana Act No. 315 of 1940. The United States was not a party to the state suit and, under settled principles, title to land in possession of the United States under a claim of interest cannot be tried as against the United States by a suit against persons holding under the authority of the United States. [Citation.] Although the state court might mould petitioner's suit to try title into a suit for possession or might merely order respondent-lessees to account for minerals removed, nevertheless such proceedings could not settle the basic issue in the litigation and might well cause confusion if they resulted in a judgment inconsistent with that subsequently rendered by the federal court." (*Leiter, supra*, 352 U.S. at pp. 226–227.) Further, "since the position of the United States is essentially a defensive one, we think that it should be permitted to choose the forum in this case, even though the state litigation has the elements of an action characterized as *quasi in rem*. We therefore hold that the District Court properly exercised its jurisdiction to entertain the suit in the federal court and to prevent the effectuation of state court proceedings that might conflict with the ultimate federal court judgment." (*Id*. at p. 228.)

Thus, the court in *Leiter* did not approve the injunction on the ground the state court lacked jurisdiction of the controversy because the jurisdiction of the federal district court was exclusive. Rather, it recognized that the issue of title to the mineral rights had to be decided in federal court, but seemed to concede that other issues, such as accounting for the minerals removed, would be within the jurisdiction of the state court.

The Western States parties and Aliet-Gass seem to argue that the United States is a necessary party to the litigation, because it involves an interest in real property owned by the United States, and exclusive jurisdiction of an action in which the United States is a party is in federal district court. Federal district courts have exclusive jurisdiction of actions to quiet title to real property in which the United States claims an interest. (28 U.S.C., §§ 1346(f), 2409a.) That jurisdiction applies, however, only when the United

12.

States' interest in the property is in issue. "For a court to exercise jurisdiction under the [Quiet Title Act (*Id.* § 2409a)], '(1) the United States must claim an interest in the property at issue, and (2) there must be a disputed title to real property.' [Citation.]" (*Robinson v. United States* (9th Cir. 2009) 586 F.3d 683, 686.) Although a dispute as to an interest in property, such as an easement, may be sufficient, there must be a dispute that actually challenges the federal government's title. (*Id.* at pp. 686, 688.)

An interest in mineral deposits under a lease from the United States is an interest in real property for purposes of the Quiet Title Act. (*Mafrige v. United States* (1995) 893 F.Supp. 691, 697, 698.) However, where the interest of the United States is not being challenged, the United States need not be made a party to the litigation. In *Alaska Consolidated Oil Fields v. Rains* (9th Cir. 1932) 54 F.2d 868 (*Rains*), the plaintiff sued to foreclose a mechanics' lien for work done in connection with the drilling of oil wells. The defendants appealed the judgment against them, asserting the land on which the work was done was operated by them under oil and gas prospecting permits issued under the MLA;[4] because the property was owned by the United States, the defendants questioned whether they held a sufficient interest in real property to subject them to the mechanics' liens alleged. The court stated:

> "It is clear that the decree of foreclosure would not be binding in any way upon the United States, and that the only interest which could be sold under the decree would be the interest of the appellants in and to the land in question. It would be necessary in order that the rights of the permittee be transferred to the purchaser at the foreclosure sale that the purchaser secure the consent of the Secretary of the Interior to the assignment. [Citation.] If the appellants have such an interest in the land as may properly be subjected to a decree of foreclosure for mechanics' liens for labor done upon the property, they cannot be heard to complain of the fact that a purchaser at a foreclosure sale would not thereby secure title to the permit, in the absence of the consent of the Secretary of the Interior and the

---

[4] The *Rains* opinion refers to this Act as "the Oil Leasing Act of Congress, approved February 25, 1920 (41 Stat. 437)." (*Rains,* at p. 868.)

13.

acceptance by him of the purchaser as the permittee under the original permit. So far as the interest of the United States is concerned, it is fully protected by the Oil Leasing Act." (*Rains,* at pp. 868–869.)

The court went on to determine that a person who took possession of federal land for the purpose of exploring for and developing oil found there holds an interest that may be subjected to a mechanic's lien under Alaska law. (*Rains, supra*, 54 F.2d at p. 871.) As to the interest of the United States, although it owned the real property, only the defendants' interest in the prospecting permits was in issue in the action. Thus, the United States was not a necessary party. (*Id.* at pp. 872–873, 874.)

Similarly, the Tearlach parties' cross-complaint did not put in issue any interest of the United States in the property. It asserted state law claims for fraud and breach of contract, based on allegations the Western States parties used misrepresentations to induce them to enter into a contract to purchase an interest in the Western States parties' oil and gas leases and thereafter failed to pay monies owed under the contract or advanced by the Tearlach parties. The trial court entered judgment awarding money damages to the Tearlach parties.

When the trial court amended the judgment, it added a provision adjudicating that Western States transferred a 60 percent interest in its oil and gas property to Tearlach California. A transfer of an interest in a lease under the MLA requires consent of the Secretary of the Interior. (30 U.S.C. §§ 187, 187a.) Under the MLA, an interest in an oil or gas lease may be assigned, subject to final approval by the Secretary of the Interior; the assignment takes effect after the assignee files with the Secretary the assignment, any required bond, and proof of the assignee's qualification under the Act to hold such an interest. (30 U.S.C. § 187a.) The Secretary has discretion to disapprove an assignment on limited grounds. (*Ibid.*) The motion to vacate presented evidence that consent of the Secretary was never given. The Tearlach parties did not dispute that evidence.

An adjudication that Western States transferred part of its interest to Tearlach California is not an adjudication of an interest of the United States in real property. It

14.

does not affect the United States' ownership of the property. It affects only the rights of the parties to this action among themselves. The leases were in existence prior to any assignment; the United States determined the terms of the leases and the amended judgment did not alter or interpret them. No party to this action disputed the existence or the terms of the leases. The parties also did not dispute that Western States contracted to assign an interest in its rights under the leases to Tearlach California. Both groups of parties based their claims against the other on the assignment contract. The right of the Secretary of the Interior to approve or consent to the assignment did not make the United States a necessary party to this litigation or create an interest sufficient to bring the case within the district courts' exclusive jurisdiction of quiet title actions against the United States.

In *Devon Energy Corp. v. United States* (1999) 45 Fed.Cl. 519 (*Devon*), the plaintiffs were owners of interests in federal oil and gas leases. They alleged the BLM's denial of drilling permits on the leases constituted an illegal taking of their property and a breach of the lease contracts. The government contended the plaintiffs had no standing to bring the claims because they did not own a recognized interest in the leases, having failed to obtain consent of the Secretary to the assignments by which they took their interests. (*Id*. at p. 530.) The court rejected the argument.

> "The transfer approval and recording provisions of the MLA serve BLM's internal administrative needs, and failure to abide by the provisions does not impact the substantive property interests properly transferred to an assignee. The approval requirements ensure that BLM at all times has on record a responsible party that can be held accountable to the government for the performance of all lease obligations and determine to whom BLM is required to give notice. [Citation.] Thus, when the identified plaintiffs failed to file a proper Transfer of Operating Rights form and seek approval from the Secretary, the transferors effectively agreed to remain accountable to BLM for all lease obligations, and plaintiffs forfeited any right to receive notice from BLM. Such an agreement, however, does not negate the otherwise proper transfer of property interests to plaintiffs. [Citation.] [¶] Although the lack of BLM approvals might impact plaintiffs' rights in their dealings with BLM, it does not undermine the valid transfer of lease

15.

interests to plaintiffs or diminish plaintiffs' right to protect those interests under the Takings Clause of the Fifth Amendment. [Citation.]" (*Id*. at pp. 530–531.)

In *Recovery Oil Co. v. Van Acker* (1947) 79 Cal.App.2d 639, the plaintiff filed an action to quiet title to its interests under an oil lease against an assignment of a royalty interest in the proceeds of the oil produced from land belonging to the United States. Consistent with the statutory requirement (30 U.S.C. § 187), the lease prohibited assignment except with the consent of the Secretary of the Interior. (*Recovery Oil,* at p. 641.) The consent of the Secretary to the assignment was not obtained. (*Id*. at p. 640.) The defendants appealed after the trial court found they had no rights pursuant to the assignment, because they had not filed the assignment with the BLM and obtained the required consent. The court reversed the judgment, stating: "These and similar laws and regulations against assignments have been before the courts numerous times. It is the established rule that they are for the benefit and protection of the government. Their prohibition can only be raised by the sovereign, is 'available only to the government' and is 'not available to an individual.' [Citation.]" (*Id*. at p. 641.)

Thus, the lack of the Secretary's consent to the assignment is irrelevant to a determination of the interests of private parties among themselves. "Where there is a private dispute as to the validity or effect of an assignment, the Secretary does not decide the question and he will not approve the assignment or take other action until the parties settle their dispute in court." (*Wallis v. Pan American Petroleum Corp.* (1966) 384 U.S. 63, 70, fn. 8.) In this action, the dispute was between the parties to the assignment, and about their rights and obligations under the assignment contract. The government's interest in the leases was not implicated.

To the extent the Western States parties contend the United States was a necessary party because it had an interest in choosing its lessee by approving or declining to approve the assignment, we disagree. The Secretary has only a limited authority to disapprove the assignment. By statute, the assignee must be qualified to own a lease

16.

under the MLA and must post the required bond. (30 U.S.C. § 187a.) "The Secretary shall disapprove the assignment or sublease only for lack of qualification of the assignee or sublessee or for lack of sufficient bond." (*Ibid.*) The Secretary has limited other grounds on which to disapprove an assignment.[5]

In *Witbeck v. Hardeman* (1931) 51 F.2d 450, 452–453 (*Witbeck*), Witbeck applied on November 12, 1923, for a permit to prospect for oil and gas on certain land belonging to the United States. On November 11, 1923, Hardeman went on the same land and made a monument and posted notice of his intent to apply in order to obtain a preferential right to such a permit. He had 30 days from that date in which to file an application for a permit. Hardeman filed his application on December 11, 1923, but did not make the application under oath or pay the required fees. The permit was awarded to Witbeck. Hardeman sued Witbeck, asserting the permit had been erroneously issued to him; Witbeck moved to dismiss, in part based on his contention the United States was an indispensable party who could not be joined. Hardeman prevailed, and Witbeck appealed.

The court concluded Witbeck was entitled to the permit, because Hardeman's preference was lost when he failed to file a completed application within the 30-day preference period. (*Witbeck, supra*, 51 F.2d at p. 453.) Regarding whether the United States was an indispensable party, the court stated:

> "It is true that neither lease nor permit ends the interest of the United States in the land involved. If the court were undertaking to dispose of the land to the injury of the United States, they would be an indispensable party. [Citations.] And in so far as lease and permit are contracts, neither could be canceled or reformed without all parties to them being before the court.

---

[5] "The Secretary shall disapprove the assignment or sublease only for lack of qualification of the assignee or sublessee or for lack of sufficient bond: *Provided, however,* That the Secretary may, in his discretion, disapprove an assignment of any of the following, unless the assignment constitutes the entire lease or is demonstrated to further the development of oil and gas: [¶] (1) A separate zone or deposit under any lease. [¶] (2) A part of a legal subdivision. [¶] (3) Less than 640 acres outside Alaska or of less than 2,560 acres within Alaska." (30 U.S.C. § 187a.)

[Citations.] But looking at the substance of the matter, we think that the disposition of the land has already been made by the act of the Secretary in issuing a permit on the terms fixed by the law and the regulations. No other or different disposition is now proposed to be made, and no term of the contract is to [be] altered. A change of permittee is alone to be effected. This would be a most important matter in contracts, permits, or leases where the person to be dealt with could be freely chosen or rejected. But here the law makes the choice, and the question is whether the Secretary by mistaking the law has given the contract to some one other than the one chosen and intended by the United States, speaking through the Congress. The court but succeeds to the Secretary in identifying that choice. The only real interest of the United States lies in having their will as expressed in their laws carried out, and this is not a proprietary interest that will be adversely affected by the transfer proposed." (*Witbeck,* at pp. 452–453.)

Similarly, in this case, the United States was not an indispensable party. The trial court did not dispose of land belonging to the United States; it did not attempt to cancel or reform the leases to which the United States was a party without its presence. Unlike the court in *Witbeck*, the trial court did not change the lessee under the lease or order an involuntary transfer of the lease. It merely declared, based on the contract the parties entered into, that the lessee, Western States, transferred a 60 percent interest in the leases to Tearlach California, effective on a specified date. That declaration addressed the issues before the trial court, which involved the relationship among the parties to the action. The court did not adjudicate the rights or obligations of the United States with respect to the leases. As indicated in *Devon*, the validity of a transfer or assignment of an interest in a lease as between the parties to that transaction is a separate question from its validity with respect to the United States and whether the Secretary consented to the assignment.

This action was not within the exclusive jurisdiction of the federal courts. As this was the only ground proffered for vacating the amended judgment, the motion to vacate the judgment should not have been granted, and the matter should not have been dismissed.

18.

## ***DISPOSITION***

The judgment of dismissal is reversed. The matter is remanded to the trial court with directions to vacate its order vacating the amended judgment and to reinstate the amended judgment entered March 3, 2011. Appellants are entitled to their costs on appeal.

_____
HILL, P. J.

WE CONCUR:


_____
CORNELL, J.


_____
FRANSON, J.

19.